NO. 4-04-0471    Filed: 5/22/06

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | |
|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) Appeal from |
|      Plaintiff-Appellee, | ) Circuit Court of |
|      v. | ) Champaign County |
| MICHAEL J. COOPER, | ) No. 03CF1406 |
|      Defendant-Appellant | ) |
| | ) Honorable |
| | ) Heidi Ladd, |
| | ) Judge Presiding. |

_____

JUSTICE KNECHT delivered the opinion of the court:

In March 2004, a jury found defendant, Michael J. Cooper, guilty of involuntary manslaughter based on his participation in the beating of Frederick McNeal, which led to McNeal's death (720 ILCS 5/9-3(a) (West Supp. 2003)). In April 2004, the trial court sentenced defendant to five years in prison. Defendant appeals, arguing he was denied his right to an open trial. We affirm.

I. BACKGROUND

In September 2003, the State charged defendant with five counts of first degree murder for his involvement in McNeal's death (720 ILCS 5/9-1(a)(1), (a)(2) (West 2002)). In March 2004, the cause proceeded to trial. On March 11 (the third day evidence was presented), during the first break of the day, the following colloquy took place:

"MR. ROSENBAUM [defendant's counsel]:

Judge, there is something I wanted to bring

to the record's attention I suppose. My cli-

ent and [codefendant's] family.  They have family here in court.  They've been watching the proceedings.  I've been told during the break that they're not being allowed to return.  Obviously [codefendant's counsel] and I[,] we've talked about this.  We don't know what's going on because we're obviously looking forward at the trial and what's going on.  We've been told that they may have been disruptive.  We don't know at whose request this has been, what the observations have been, whether it's one particular person or if it's been all of them together.  And I would just like to inquire for the record why they're being left out and if there is any other option in terms of perhaps an admonition to them or excluding only the people who, in fact, have been causing the disruption.

THE COURT: I was informed by the officers that I believe there were four people.

Is that correct, Officer Sherrick?

Five people that have been making audible sounds and tisks and disagreeing audibly and loudly with the witnesses to the point where two of the officers in the courtroom noticed that the four jurors on the end

turned and visibly looked at the people making the sounds. The officers have repeatedly admonished these people not to make any sounds or any editorial comments of that nature. They persisted in doing it yesterday and again today, and I will not have anyone in the audience make any disruptive noises or gestures or commentaries on anything that transpires in the courtroom so those five people are now not allowed in the courtroom. They were warned by the officers. They persisted in doing it.

Anyone else may come in if they conduct themselves appropriately. I don't know who the five were or who they're affiliated with. I'm not going to have anybody carrying on in my courtroom.

MR.ROSENBAUM: May I just step in the hallway because I think there may have been more than five excluded and in particular I'm thinking of my client's mother. If she was not involved, I would ask that she come in.

May I have just one moment to see?

THE COURT: You may. Certainly.

MR. ROSENBAUM: Thank you, Judge. We have to take it up later. Some of them are

not right in the hallway so.

    THE COURT: All right."

Later that day, following the conclusion of the presentation of evidence, defense counsel again raised the issue with the trial court, stating:

    "MR. ROSENBAUM: Judge, I would ask that the [c]ourt revisit the issue of my client's family and I suppose [codefendant's] family as well. I spoke with his mother in particular and one other woman who was here, I think another relative, who indicated to me in the hallway that they in particular did not make any noises or talk at all and I'm at least a little concerned that perhaps all five were taken as a group whereas maybe one or two did not specifically make any noises.

    I would ask that the [c]ourt consider perhaps if they were allowed into the courtroom tomorrow at 8:30 to listen to closing arguments with an admonition of the [c]ourt that should for any reason they make any noises, signs, or anything they would be escorted out without any questions. I would simply ask the [c]ourt to reconsider that.

    THE COURT: Thank you, Mr. Rosenbaum.

    I have considered that. I didn't know

˅ 4 ˅

who they were affiliated with, but they were admonished repeatedly by the officers. Both the officers were very clear as to who violated that and that their noises were audible and disrupted the jury. There will be no way to put that cat back in the bag if it happens during closing arguments. I appreciate the issues, but they were given every opportunity and that is unfair to any of the parties or to the jurors to have that disruption affecting them so I am not going to let them back in. They were given repeated opportunities to address those concerns.

MR. ROSENBAUM: I completely appreciate the [c]ourt's concern. I just wish the court officers had told me yesterday and I could have confronted the family and we never would have reached this point. I apologize.

THE COURT: There is no need to apologize. It was out of your control, and the officers are--they were given their chance."

The jury found defendant guilty of involuntary manslaughter, and the trial court sentenced defendant as stated. In April 2004, the court held a hearing on defendant's posttrial motion.

In addressing the public-trial issue raised in the

motion, the trial court noted only those spectators who were disruptive were barred from reentering the courtroom. The court stated it was informed by the court officer and a correctional officer the individuals were "making comments, gesture[s], loud noises, facial expressions, and commenting on the testimony of witnesses; generally disrupting the proceedings." Both officers reported the jurors were clearly distracted and on multiple occasions turned to look at the noisy spectators. The court noted the officers were positioned several feet away from the disruptive spectators. The court stated it also heard noise coming from that general area but was unable to identify the source because it was too far away and was concentrating on the proceedings. The court indicated it also noticed jurors looking in the direction of the noise. The court stated it authorized the officers to bar the disruptive spectators because they persisted in acting inappropriately after repeated warnings, on two separate days, by the officers. The court stated it had a duty to maintain an orderly proceeding free from outside influence on the jurors, and the barred spectators had proved themselves "untrustworthy." The court denied the posttrial motion. This appeal followed.

## II. ANALYSIS

On appeal, defendant argues the trial court abused its discretion and violated his right to a public trial when it denied defendant's mother and another woman entry into the courtroom for the remainder of the trial and closing arguments.

The sixth amendment of the United States Constitution guarantees a defendant the right to a public trial. U.S. Const., amend. VI. This guarantee is for the benefit of the accused and "is a safeguard against any attempt to employ the courts as instruments of persecution." People v. Seyler, 144 Ill. App. 3d 250, 252, 494 N.E.2d 267, 268-69 (1986); Waller v. Georgia, 467 U.S. 39, 46, 81 L. Ed. 2d 31, 38, 104 S. Ct. 2210, 2215 (1984)

While a presumption exists that all trials are open, the right is not absolute. Waller, 467 U.S. at 45, 81 L. Ed. 2d at 38, 104 S. Ct. at 2215. However, the presumption of openness will yield only to an "overriding interest" that is specifically articulated. People v. Taylor, 244 Ill. App. 3d 460, 468, 612 N.E.2d 543, 549 (1993). "[T]he party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure." Waller, 467 U.S. at 48, 81 L. Ed. 2d at 39, 104 S. Ct. at 2216.

Neither the press nor members of the general public were excluded from the courtroom, so the limited exclusion of the disruptive spectators from the courtroom was a partial closure of the trial proceedings. Taylor, 244 Ill. App. 3d at 464, 612 N.E.2d at 546. The "overriding interest" test applies to partial closures. Taylor, 244 Ill. App. 3d at 467, 612 N.E.2d at 548.

The defendant is not required to prove specific preju-

dice to obtain relief for a violation of his right to a public trial (Waller, 467 U.S. at 49, 81 L. Ed. 2d at 40, 104 S. Ct. at 2217), nor is the right subject to harmless-error analysis (Arizona v. Fulminante, 499 U.S. 279, 310, 113 L. Ed. 2d 302, 331, 111 S. Ct. 1246, 1265 (1991)).  The sixth amendment protects all portions of the trial and not just the right to publicly present evidence and witnesses.  People v. Willis, 274 Ill. App. 3d 551, 554, 654 N.E.2d 571, 574 (1995).  "The standard to be applied in determining whether there is a sufficient record to support a trial judge's finding that grounds exist to exclude spectators from a courtroom is whether there has been an abuse of discretion."  Seyler, 144 Ill. App. 3d at 252, 494 N.E.2d at 269.

The trial court, through the court officers, barred re-entry of five individuals known to have caused repeated disturbances.  Defendant does not dispute maintaining proper courtroom decorum is an overriding interest or that this interest was not likely to be prejudiced in this case.  Instead, defendant contends (1) the court failed to insure the closure was no broader than necessary to protect that interest, (2) the court did not consider alternatives, and (3) the court's findings of fact were inadequate.  We disagree.

In barring reentry of the five disruptive individuals, the trial court properly relied on information provided by the officers and the officers' identification of the individuals.  The officers were within a few feet of the disruptive spectators and warned the individuals on numerous occasions to cease their

conduct. In addition, the court heard noises coming from the general area indicated by the officers and observed several jurors looking in that direction. However, the court could not clearly identify who was responsible for the disturbances because it was too far away and was concentrating on the proceedings.

Contrary to defendant's assertion, the trial court did not have to conduct a hearing on the issue. Defense counsel presented defendant's mother's account that she was not involved in the disturbances. However, the court clearly believed the officers were able to identify the offenders. In light of the two officers' close proximity and repeated interaction with the individuals over the course of two days, the court could reasonably rely on the officers' identification of the parties responsible. Because only those spectators known to have caused the disturbances were excluded, the closure was no broader than necessary.

Defendant's assertion the trial court did not consider alternatives to excluding the spectators is without merit. After the close of the evidence, defense counsel suggested the individuals be allowed to enter the courtroom for closing arguments with an admonishment that they would be escorted out for any more disturbances. The court expressly stated it had considered this option but rejected it in light of the individuals' refusal to comply with the officers' numerous requests to cease their inappropriate conduct. The disruptive parties were repeatedly warned by the court officers about their behavior over two days

of proceedings, yet continued to be disruptive. The court found the parties' continued disruptions and refusal to heed the officers' warnings made them "untrustworthy." The court considered defendant's right to an open trial but found the spectators' refusal to comply with the officers' request put the fairness of the proceeding at stake.

The fact the officers warned the problematic spectators multiple times before barring them from the courtroom shows the trial court not only considered but also implemented an alternative to partially closing the proceedings. The disruptive spectators were given ample opportunities to correct their behavior but simply refused to conduct themselves accordingly.

The trial court's findings were sufficient to support excluding the disruptive spectators and partially closing the proceedings. The record shows the officers repeatedly warned these individuals their conduct was inappropriate, yet they continued to be disruptive. The court indicated it and the officers observed several jurors become distracted and look toward the disruptive spectators. The court indicated it also heard noises coming from the area indicated by the officers. Although the judge was not personally able to identify the problematic individuals, the officers could. The information before the court was adequate to support the closure and the court did not have to conduct a hearing in spite of some of the spectators' denials of wrongdoing.

Court officers and bailiffs need the ability to evict

or limit entrance to disruptive spectators. The court must also carefully guard the fairness of the trial. No error occurred here, but the trial court should have provided a more complete record of what transpired and should have investigated further when defense counsel advised the barred spectators were family members of the defendant and codefendant.

Even though it would have required more court time, it would have been prudent for the trial court to be certain the individuals who were barred entrance were correctly identified and that only those specific individuals identified by the court officers were the ones barred from entrance. It would have been helpful if defense counsel had offered the names of the individuals who believed they had been barred from the proceedings.

It is understandable both counsel and the trial court were focused on the trial itself rather than this distraction. However, the right to a public trial is important and this unfortunate distraction deserved the personal attention of the court.

It would have been preferable for the trial court to have confronted the individuals outside the presence of the jury and entered an order barring them from the proceedings after their identification was confirmed by the court officers.

We do not believe the trial court was required to conduct an evidentiary hearing or to permit the identified spectators to speak on their own behalf. The record is clear disruptive spectators were repeatedly warned and they continued

their behavior over the course of two days.  A trial judge managing a jury trial must rely on the court officers to assist in maintaining decorum.  The trial judge appropriately relied upon the officers, but once defense counsel raised a concern, the trial judge should have created a record as to who was barred.

### III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

APPLETON and COOK, JJ., concur.