# Illinois Official Reports

## Appellate Court

*People v. Williams*, 2015 IL App (2d) 130585

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TYRONE D. WILLIAMS, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-13-0585 |
| Filed | February 27, 2015 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's contention that his constitutional right to a public trial was violated when the trial court excluded three spectators from the hearing on the revocation of his probation was rejected by the appellate court and the appellate court affirmed the expulsion of the spectators, even though an assistant State's Attorney had asked the court to admonish the three about talking to witnesses and that they be investigated with respect to witness intimidation, since the United States Supreme Court has held in *Morrissey* that the liberty interest of a convicted offender who is on parole or probation is of a lower order than that of an accused facing a criminal offense, and there is no constitutional right to a public hearing on a petition to revoke probation. |
| Decision Under Review | Appeal from the Circuit Court of Winnebago County, No. 10-CF-1361; the Hon. John R. Truitt, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Thomas A. Lilien and Richard C. Harris, both of State Appellate Defender's Office, of Elgin, for appellant.

Joseph P. Bruscato, State's Attorney, of Rockford (Lawrence M. Bauer and Jay Paul Hoffmann, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE SPENCE delivered the judgment of the court, with opinion. Justices Zenoff and Burke concurred in the judgment and opinion.

**OPINION**

¶ 1    In November 2010, defendant, Tyrone D. Williams, pleaded guilty in the circuit court of Winnebago County to a single count of aggravated discharge of a firearm (720 ILCS 5/24-1.2(a)(1) (West 2010)) and was sentenced to a 36-month term of probation. The State subsequently petitioned the trial court to revoke defendant's probation, alleging, *inter alia*, that, on June 23, 2012, defendant committed the offenses of aggravated discharge of a firearm (720 ILCS 5/24-1.2(a)(2) (West 2012)) and unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2012)). Following a hearing, the trial court revoked defendant's probation and sentenced him to an 8½-year prison term. On appeal, defendant argues that, by excluding three spectators from the revocation hearing, the trial court violated his constitutional right to a public trial. We affirm.

¶ 2    The State's evidence established that in the early morning hours of June 23, 2012, Antonio Williams was treated for gunshot wounds at a Rockford hospital. The State presented the testimony of seven witnesses during its case-in-chief at the revocation hearing. The third of those witnesses, Tiffany Seif, testified that on June 23, 2012, she and a number of other individuals, including defendant, had gathered outside an apartment building. At some point, defendant began to argue with Antonio Williams. After a few minutes Seif heard gunshots. Seif testified that she thought she saw someone known to her as "Rio" hand a gun to defendant. Seif then went to look for Antonio Williams, who had run away. Shortly after she located him, he collapsed. Two other individuals put Antonio Williams in Seif's car, and she drove him to the hospital. At about 5:45 a.m., several Rockford police officers responded to a report of suspicious vehicles at 1200 South Court Street. Defendant was standing by one of the vehicles, which was occupied by two individuals. A 9-millimeter handgun was discovered in that vehicle. It was stipulated that forensic testing on shell casings found at the scene of the shooting established that they had been fired from that weapon.

¶ 3    After the State presented the final witness in its case-in-chief, the following exchange took place:

"MS. LARSON [Assistant State's Attorney]: Judge, Wendy Larson for the People. There are two black males and a black female seated in the second row of the gallery. The People, along with the defense attorney, Mr. Taylor, made an offer to the Court of an incident that happened after our civilian witness testified. We indicated to the Court that the large black male and the smaller black male, somehow seemed to be following our victim advocate along with the civilian witness as she left the courthouse. The Court agreed that since she had already testified, there was not much that could or should happen, although, prior to alerting the Court of this, *** I did have a conversation here at counsel table quietly [with cocounsel and the victim advocate]. And it now appears that these individuals not only overheard our discussion but had a discussion amongst themselves *** in which they were discussing what they should tell the Court about why they were pursuing this witness, that they should merely say that they were stepping out for some fresh air. I have a concern, Judge. I'm going to ask that the gallery be cleared, that the Court admonish these people they are not to be talking to witnesses. And I'm going to ask that officers from the County be called, that we get these individuals' names, and that an investigation of witness intimidation be pursued by the County sheriff.

MR. TAYLOR [defense attorney]: Judge, number one, if there's going to be an accusation made that's going to be made in the context of this proceeding, as far as what the State chooses to investigate on their own time, I don't care. I don't have a dog in that fight. But it appears to me that with less than stellar evidence so far, they are now trying to cast aspersions on my client based on unspecified accusations against people that are here in the gallery, and I have a problem with that.

THE COURT: Well, I don't think it's directed to your client at all.

MR. TAYLOR: Okay. As long as–as long as there's not–its clear that there's no accusation being made against him, and as long as–Your Honor can–I don't really think I have any kind of standing to respond as long as you're not considering it any kind of a piece of evidence against my client. I do, however, think before we start accusing people of something if there's going to be an accusation against anybody, somebody who claims to have overheard something should be called and sworn and testify to what they overheard. But if it's not going to be–I don't really want to contaminate these proceedings with that if–as long as everybody is clear that my client had nothing to do with it.

THE COURT: Well, your client wasn't a party to our conversation in the back.

MR. TAYLOR: Sure.

THE COURT: And your client certainly wasn't in the courtroom whenever Ms. Lalowski heard what she heard.

MR. TAYLOR: And for the record, I was not–after our conversation, I never came back in the courtroom before I did with Your Honor after having heard these allegations were getting brought up. I was in the back trying to get a chance to review a stipulation with my client. So we have nothing to do with any of this. That's my point, Judge.

THE COURT: All right. Well, there was an incident last week as well where a person present observing engaged in criminal activity after the case had been called. It

was called to the Court's attention. I understand that person was charged with a misdemeanor felony offense of some kind, and in order to preserve the integrity of these proceedings, I'm going to order that George Williams, Dwayne Thomas, and Markito Reed be barred from this courtroom during the balance of the proceedings."

¶ 4   The sixth amendment to the United States Constitution (U.S. Const., amend. VI) guarantees a criminal defendant the right to a public trial. "This guarantee is for the benefit of the accused and 'is a safeguard against any attempt to employ the courts as instruments of persecution.' [Citations.]" *People v. Cooper*, 365 Ill. App. 3d 278, 281 (2006). Although the right to a public trial is not absolute, a party seeking to close proceedings to the public " 'must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure.' " *Id.* at 282 (quoting *Waller v. Georgia*, 467 U.S. 39, 48 (1984)).

¶ 5   Defendant argues that the trial court's decision to eject three spectators from the revocation hearing did not comply with the above principles. Defendant relies in part on *Alvarez v. State*, 827 So. 2d 269 (Fla. Dist. Ct. App. 2002), which recognized, as a matter of due process, a right to a public probation-revocation hearing corresponding to the right to a public trial. When the trial court expelled the spectators in question, defense counsel protested that any misconduct on the part of the spectators should not be imputed to defendant. However, defense counsel did not raise any objection based on the right to a public trial. Nor did defendant raise the issue in his motion for reconsideration. Ordinarily a defendant forfeits review of an error if he or she does not both object at trial and raise the issue in his or her posttrial motion. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). Defendant argues that review is proper because "[t]he right to a public trial can only be waived when the defendant makes a knowing and intelligent waiver of that right." Defendant alternatively argues that the issue is reviewable under the plain-error rule. See Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court.").

¶ 6   Before proceeding, we must stress the important distinction between the concepts of "forfeiture" and "waiver." In *People v. Blair*, 215 Ill. 2d 427, 444 n.2 (2005), our supreme court stated as follows:

"As explained by the United States Supreme Court in *United States v. Olano*, 507 U.S. 725 *** (1993), 'Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of the right, waiver is the "intentional relinquishment or abandonment of a known right." ' [*Id.* at 733.]"

Although a forfeited error may qualify for review under the plain-error rule, *waiver* of a right forecloses review of a claim of error predicated on the waived right. *People v. Tapia*, 2014 IL App (2d) 111314, ¶ 46. "Deviation from a legal rule is 'error' *unless the rule has been waived*." (Emphasis added.) *Olano*, 507 U.S. at 732-33. The State maintains that defendant's attorney intentionally relinquished whatever right defendant might have otherwise had to a public revocation hearing, thereby waiving any such right on defendant's behalf. If that is correct, no error occurred and the plain-error rule would have no application. The State alternatively argues that, even if counsel merely *forfeited* the issue, no error occurred.

¶ 7   It appears that courts are not in complete agreement about what an effective waiver of the right to a public trial entails. *Walton v. Briley*, 361 F.3d 431, 434 (7th Cir. 2004), held that "like other fundamental trial rights, a right to a public trial may be relinquished only upon a showing

that the defendant knowingly and voluntarily waived such a right." On the other hand, *United States v. Reagan*, 725 F.3d 471 (5th Cir. 2013), held that a failure to properly object to an alleged closure of the courtroom waived any error and that " '[w]aived errors are entirely unreviewable, unlike forfeited errors, which are reviewable for plain error.' " *Id.* at 488 (quoting *United States v. Musquiz*, 45 F.3d 927, 931 (5th Cir. 1995)). *United States v. Christi*, 682 F.3d 138 (1st Cir. 2012), appears to represent an intermediate approach. *Christi* suggests that counsel's failure to object to a closure of the courtroom does not invariably foreclose plain-error review. *Id.* at 142. However, according to the *Christi* court, where the trial court has, as a practical matter, invited an objection to a closure of the courtroom, counsel's silence can "pass[ ] beyond inadvertence or passivity to the point of waiver." *Id.*

¶ 8 We need not decide which (if any) of these approaches is correct. Even if we were to conclude that the failure to object amounted merely to a forfeiture and not to a waiver, review under the plain-error rule would still be unavailable here. The plain-error rule permits review of a forfeited error in the following circumstances: "(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). Defendant contends that the second circumstance warrants plain-error review in this case. Our supreme court has equated the second circumstance with "structural error" (*People v. Thompson*, 238 Ill. 2d 598, 613 (2010)), *i.e.*, error that is not amenable to an individualized assessment of prejudice (accord *Washington v. Recuenco*, 548 U.S. 212, 218 (2006) ("Only in rare cases has this Court held that an error is structural, and thus requires automatic reversal.")).

¶ 9 Violation of the right to a public *trial* has been described as structural error. *Id.* at 218 n.2. The question here, however, is whether there is a constitutional right to a public *probation-revocation hearing*. In *Morrissey v. Brewer*, 408 U.S. 471 (1972), the United States Supreme Court considered what procedural protections must be afforded in a parole-revocation proceeding. The Court stated as follows:

> "Our task is limited to deciding the minimum requirements of due process. They include (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole. *We emphasize there is no thought to equate \*\*\* [the] parole revocation [hearing] to a criminal prosecution in any sense. It is a narrow inquiry; the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial.*" (Emphasis added.) *Id.* at 488-89.

¶ 10 The same principles apply to proceedings to revoke probation. *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973). Defendant cites *Alvarez* for the proposition that due process requires, in addition, that the revocation hearing be open to the public. The *Alvarez* court reasoned, in part,

that "these proceedings are as important to the defendant's liberty as is the criminal prosecution, and the defendant will desire the public presence to assure he/she is being fairly dealt with by the court."[1] *Alvarez*, 827 So. 2d at 273. But the United States Supreme Court has made clear that the liberty interest of a convicted offender who is on parole or probation is of a somewhat lower order than that of the accused facing prosecution for a criminal offense. *Morrissey*, 408 U.S. at 480-83. We note that, in light of *Morrissey* and *Gagnon*, the Supreme Court of Mississippi has specifically held that there is no constitutional right to a public hearing on a petition to revoke probation. *Williams v. State*, 409 So. 2d 1331, 1333 (Miss. 1982).

¶ 11   Plain-error review is reserved for errors that are clear or obvious based on law that "is well settled at the time of trial; if the law was unclear at the time of the trial, but becomes clear (*i.e.*, settled) during the appeal, then the error is not 'plain' for purposes of the plain-error doctrine." *People v. Downs*, 2014 IL App (2d) 121156, ¶ 20; see *In re M.W.*, 232 Ill. 2d 408, 431 (2009) (error is not plain if the law is unclear at time of trial). The pertinent law is not sufficiently settled to permit review under the plain-error rule.[2]

¶ 12   For the foregoing reasons, the judgment of the circuit court of Winnebago County is affirmed.

¶ 13   Affirmed.

---

[1]Interestingly, the *Alvarez* court is among those that have held that the failure to object to a closure of the courtroom amounts to a waiver of any error, and on that basis the court declined to grant the defendant any relief.

[2]Defendant has pointed out that it is provided by state statute that the evidence in a revocation proceeding be presented in "open court." See 730 ILCS 5/5-6-4(c) (West 2012). Defendant argues that the statute thus contemplates a public proceeding. Be that as it may, it does not follow that the standard for excluding spectators from a revocation proceeding is necessarily the same as the constitutional standard for excluding members of the public from a trial or that a violation of this purely statutory requirement would constitute structural error. Thus, plain-error review is unavailable with respect to any statutory error.