NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 170809-U

NO. 4-17-0809

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 11, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | Champaign County |
| JEAN A. FUKAMA-KABIKA, | ) | No. 15CF648 |
|     Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Thomas J. Difanis, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Justices Knecht and Holder White concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court affirmed, holding (1) there was no error in the giving of *Zehr* admonishments under Illinois Supreme Court Rule 431(b) (eff. July 1, 2012), (2) the trial court did not err by removing a spectator interacting inappropriately with a member of the jury, (3) the trial court did not err by permitting the State to recall the victim for limited testimony on rebuttal, and (4) defendant failed to establish plain error since none of the prosecutor's comments in closing argument were error.

¶ 2    In May 2017, a jury convicted defendant, Jean A. Fukama-Kabika, of two counts of criminal sexual assault, one count of criminal sexual abuse, and one count of unlawful restraint. The trial court sentenced defendant to seven years in the Illinois Department of Corrections (DOC) on each of the sexual assault counts and one year in prison for the unlawful restraint count, with each sentence to be served consecutively. Defendant was sentenced to three years in DOC on the sexual abuse count, to be served concurrently. In his posttrial motion, defendant claimed the prosecution improperly sought to shift the burden of proof during closing

arguments, the State failed to prove him guilty beyond a reasonable doubt, and defendant's conviction for unlawful restraint violated the "one-act, one-crime" rule. Defendant further contended the trial court committed error by denying defendant's demand for production of certain witness statements, denying defendant's first motion *in limine*, failing to give defendant's non-IPI jury instruction, permitting the victim to testify again in rebuttal, and in denying defendant's pretrial motion to suppress. Defendant's posttrial motion was denied, and this appeal follows.

¶ 3                                    I. BACKGROUND

¶ 4            In May 2015, the State charged defendant with one count of criminal sexual assault, a Class 1 felony (720 ILCS 5/11-1.20(a)(1) (West 2014)), one count of criminal sexual abuse, a Class 4 felony (720 ILCS 5/11-1.50(a)(1) (West 2014)), and one count of unlawful restraint, also a Class 4 felony (720 ILCS 5/10-3(a) (West 2014)). The charges stemmed from an incident on May 3, 2015, where defendant, a legal émigré from the Democratic Republic of Congo, was alleged to have sexually assaulted a female acquaintance he knew as a fellow nursing student at Parkland Community College. The victim accepted defendant's invitation to attend a party at a local hotel televising a professional boxing match. The victim and defendant arrived separately, and defendant was in the company of several friends. The group socialized, eating and drinking throughout the evening, until, eventually, everyone left to go home. As the victim went to her car, defendant approached, indicating he needed a ride, and she agreed to drive him home. Once they arrived near his residence, defendant assaulted her, penetrating her digitally, fondling her breasts, attempting to force her to perform oral sex on him, and eventually forcing her on top of him in an effort at vaginal penetration. When that proved unsuccessful, the victim indicated she yelled at defendant to leave her vehicle and he did. She spoke with a friend

- 2 -

shortly after the incident, later she spoke to a relative, and she contacted the police early the same morning.

¶ 5        When the police confronted defendant about the victim's accusations, he admitted the victim was unwilling and told him "no" when he began his advances. Defendant, whose primary language is French, testified through an interpreter and indicated he had difficulty communicating with the police when they questioned him. During police questioning, however, he acknowledged turning the car's ignition off against her will to prevent her from leaving. When asked why he persisted in his advances after the victim made it clear she wanted him to leave her car, the officer testified defendant said "he continued to try to initiate this contact with her because he was a male and you had to continue trying to make sure that a woman was not really interested." According to the officer, defendant acknowledged reaching into the victim's pants and touching her vagina with his fingers even after she "continued to tell him no" and only stopped when "he realized that he was not going to get as much or this was not going to go as far as he wanted so he ended up giving up." Defendant, testifying on his own behalf, said the sexual contact was consensual. He also testified his inability to communicate effectively in English caused the officers to misunderstand what he was trying to convey about the interaction between him and the victim in the car. He said he understood the victim to be saying she did not want another relationship, but that she was not opposed to what was transpiring in her vehicle.

¶ 6        Although each side called several additional witnesses to corroborate either what transpired earlier in the evening or after the victim first disclosed the incident in her car, the evidence of the encounter was limited to the testimony of defendant and the victim. Since the victim declined to go to the hospital, despite the investigating officers' request she go, there was no physical or forensic evidence presented.

¶ 7        The jury returned verdicts of guilty on two counts of criminal sexual assault, one count of criminal sexual abuse, and one count of unlawful restraint. Defendant's posttrial motion raised eight specific claims of error: (1) the State improperly shifted the burden of proof during its closing argument, (2) the State failed to prove defendant guilty beyond a reasonable doubt, (3) defendant's conviction for unlawful restraint violated the one-act, one crime rule and was not proved beyond a reasonable doubt, (4) the trial court erred in denying defendant's demand for the production of certain witness statements from the State, (5) the trial court erred in denying defendant's first motion *in limine* regarding State's witness Carol Carradine, (6) the trial court erred by refusing to give defendant's non-IPI instruction No. 1, (7) the trial court erred by allowing the State to recall the victim as a rebuttal witness, and (8) the trial court erred by denying defendant's pretrial motion to suppress evidence. The trial court denied the motion and ultimately sentenced defendant to seven years on each of the counts of criminal sexual assault, to run consecutively to each other, three years on the count of criminal sexual abuse, to run concurrently with all other counts, and one year on the unlawful restraint, to run consecutively to the criminal sexual assault counts.

¶ 8        This appeal follows.

¶ 9                                II. ANALYSIS

¶ 10        Defendant raises four issues, only two of which were argued before the trial court in his posttrial motion. He now claims the trial court (1) erred in its Illinois Supreme Court Rule 431(b) (eff. July 1, 2012), or *Zehr*, instructions by grouping the four principles together in its questions to the jurors, and (2) violated defendant's constitutional right to a public trial when it excused one of his "supporters" who was caught shaking hands with one of the jurors, apparently as they were exiting the courtroom during jury selection. Based on his posttrial motion,

defendant again claims the trial court erred when it permitted the victim to be recalled in rebuttal and that defendant was denied a fair trial when the prosecutor improperly shifted the burden of proof to defendant during his closing argument. Defendant now further claims the prosecutor improperly vouched for the credibility of the victim during his closing argument as well.

¶ 11                                A. *Zehr* Admonishments

¶ 12        Defendant accurately notes the question of whether a trial court violated Illinois Supreme Court Rule 431(b) (eff. July 1, 2012), and if so, the effect of noncompliance, are reviewed *de novo*. See *People v. Wilmington*, 2013 IL 112938, ¶ 26, 983 N.E.2d 1015; see also *People v. Wrencher*, 2011 IL App (4th) 080619, ¶ 37, 959 N.E.2d 693. For a rule so straightforward in its language and the Illinois Supreme Court so clear in its direction, it is surprising that 34 years after *People v. Zehr*, 103 Ill. 2d 472, 469 N.E.2d 1062 (1984), and 23 years after Rule 431(b) was amended, we are still dealing with this issue. The rule itself is simple—the trial court is to ask each prospective juror whether that juror *understands and accepts* the following principles: "(1) that the defendant is presumed innocent of the charge(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that if a defendant does not testify it cannot be held against him or her." Ill. S. Ct. R. 431(b) (eff. July 1, 2012). We recently observed the language of Rule 431(b) has been described by our supreme court as "clear and unambiguous," requiring "a specific question and response process." (Internal quotation marks omitted.) *People v. Bell*, 2020 IL App (4th) 170804, ¶ 106, 145 N.E.3d 740 (citing *People v. Thompson*, 238 Ill. 2d 598, 607, 939 N.E.2d 403, 409 (2010)). In *Bell*, the trial court explained the four principles contained in Rule 431(b) to the venire and then asked each prospective juror if he or she "accepted" the

principles but failed to ask each prospective juror if he or she "understood" the principles. We found, the State having even conceded the issue, the failure was error, but we concluded the defendant failed to establish first-prong plain error since the evidence was not closely balanced. *Bell*, 2020 IL App (4th) 170804, ¶ 113.

¶ 13        Three years earlier, in *People v. McGuire*, 2017 IL App (4th) 150695, ¶ 35, 92 N.E.3d 494, this court sought to explain the importance of strict compliance with Rule 431(b):

> "That rule ensures that members of the jury understand and accept the bedrock principles of Anglo-American criminal law. Failing to comply with [the rule] could threaten the integrity of the jury's verdict or, at the very minimum, cast doubt on any guilty verdict a jury might return. Trial courts must exercise diligence when instructing the jury of the *Zehr* principles as codified in Rule 431(b) and must not deviate in any way from the precise language chosen by the Illinois Supreme Court to be in that rule."

¶ 14        In an effort to reinforce the significance of following the language in the rule, we highlighted the need for prosecutors to be aware of the rule's strict requirements so they could alert the court to any deficiencies in their admonishment, thereby protecting their records. In *McGuire*, the trial court, after reciting each principle individually, asked prospective jurors if they "disagreed" with each principle but failed to ask whether they understood and accepted them. We noted this was "clear error." However, the trial court, at the completion of its inquiry for each group of jurors then asked both the State and defense to indicate whether they "believe that [the prospective jurors] ha[ve] been properly admonished as far as [the] *Zehr* principles." *McGuire*, 2017 IL App (4th) 150695, ¶ 9. As a result, defendant's acquiescence precluded raising the issue under a "plain error" analysis on appeal and distinguished the facts in *McGuire*

from *People v. Sebby*, 2017 IL 119445, 89 N.E.3d 675, decided by the supreme court only five months before. There, our supreme court said Rule 431(b) was not satisfied when the trial court asked prospective jurors whether they "believed in" or "had any problem with" any of the four *Zehr* principles. Although originally grouping all four together, as the court continued questioning the jurors it discussed each principle while interspersing comments and questions about whether the jurors could be fair and impartial. There too, the defense failed to object to the method of questioning at trial and sought to raise the issue as one of first prong plain error, *i.e.*, clear error where the evidence is closely balanced. The supreme court held a Rule 431(b) violation constituted an "instructional error" which would not entitle a defendant to second-prong automatic reversal as a structural error absent evidence of actual jury bias. *Sebby*, 2017 IL 119445, ¶ 67. However, when coupled with proof of closely balanced evidence, it required reversal under the first prong, since "[i]f the defendant carries that burden, prejudice is not presumed; rather, '[t]he error is actually prejudicial.' " *Sebby*, 2017 IL 119445, ¶ 51 (quoting *People v. Herron*, 215 Ill. 2d 167, 193, 830 N.E.2d 467, 483 (2005)). The supreme court found, after evaluating "the totality of the evidence and conduct[ing] a qualitative, commonsense assessment of it within the context of the case," the evidence was closely balanced and the court's instructional error warranted reversal and remand for a new trial. *Sebby*, 2017 IL 119445, ¶¶ 53, 78.

¶ 15 The accepted methods of questioning are as numerous as the cases deciding the issue. By way of example, in the oft-cited *People v. Belknap*, 2014 IL 117094, ¶ 42 23 N.E.3d 325, jurors were questioned in panels of six. In *Wilmington*, 2013 IL 112938, ¶ 28, the prospective jurors were questioned as a group. In *People v. Hayes*, 409 Ill. App. 3d 612, 614, 949 N.E.2d 182, 185 (2011), jurors were questioned in panels of 14. In *People v. Willhite*, 399 Ill.

App. 3d 1191, 1193, 927 N.E.2d 1265, 1267 (2010), jurors were broken down into panels of four before being questioned. The trial court in *People v. Brown*, 2019 IL App (5th) 160329, ¶ 4, 145 N.E.3d 486, questioned jurors by row. In *People v. Morris*, 2013 IL App (1st) 110413, ¶¶ 80, 83, 1 N.E.3d 1033, where the court questioned all 14 prospective jurors in the jury box as well as 20-25 prospective jurors seated in the gallery, the First District noted, "[T]here is no requirement that a trial court use the exact language of the rule and the rule does not prescribe a precise formula for trial judges to use in ascertaining jurors' prejudices or attitudes." (Internal quotation marks omitted.) In each case, regardless of whether the actual questions were found to be error, the method was never criticized.

¶ 16        Here, defendant fails to note the trial court, at the outset of the jury selection process, informed all the prospective jurors present they would be receiving written instructions at the conclusion of the trial, which would include the following:

> "The first instruction is that the defendant is presumed to be
> innocent of the charges against him. This presumption remains
> with him throughout every stage of the trial and during your
> deliberations on the verdict, and is not overcome unless from all
> the evidence in this case you are convinced beyond a reasonable
> doubt that he is guilty. The State has the burden of proving the
> defendant—proving the guilt of the defendant beyond a reasonable
> doubt, and this burden remains on the State throughout the case.
> The defendant is not required to prove his innocence. In
> connection with that last sentence, this defendant, as does every
> individual, possess an absolute right not to testify at his trial if he

- 8 -

so chooses. If the defendant chooses not to testify, you will receive an instruction that states the fact that the defendant did not testify must not be considered by you in any way in arriving at your verdict."

¶ 17 Later, when asking about these principles in particular, the trial court grouped all four *Zehr* principles into one question, asking each panel of four prospective jurors whether they "understood" or "understand those instructions" and whether they "will follow those instructions" before impaneling them. Defendant objects not only to the grouping of the principles but also what he characterized as the "suggestive practice" of the court by "affirmatively stat[ing] the jurors would understood [*sic*] and follow the principles before eliciting their response with the leading question 'is that correct?'. "

¶ 18 As the State accurately points out, this particular judge's practice of grouping all four *Zehr* principles into one question was previously addressed in *Willhite*, and the practice in general, most recently in *People v. Kinnerson*, 2020 IL App (4th) 170650. In each case, the defendant complained about the collapsing of all four issues into one broad instruction; and, in each, just as in the case before us, there was no objection to this process at trial or by way of a posttrial motion. One may suspect, since the majority of cases raising *Zehr* issues on appeal involve arguing plain error to avoid forfeiture, this may be because it is rarely an issue for defendant or his counsel at trial.

¶ 19 Regardless, in *Kinnerson*, the defendant also argued the trial court erred by "combining the four principles into a single statement on the law." (Internal quotation marks omitted.) *Kinnerson*, 2020 IL App (4th) 170650, ¶ 60. This court found the trial court's statement of all four principles, followed immediately by questioning of jurors "row by row," asking, "do

each of you understand and accept these basic propositions of law" with an indication of responses by row, was sufficient to comply with both Rule 431(b) and the supreme court's admonishment in *Thompson* that the court "address each of the enumerated principles" and determine "whether the potential jurors both understand and accept each of the enumerated principles." *Kinnerson*, 2020 IL App (4th) 170650, ¶ 60 (quoting *Thompson*, 238 Ill. 2d at 607). We noted neither the rule nor the supreme court required the trial court to address each principle "separately." (Internal quotation marks omitted.) *Kinnerson*, 2020 IL App (4th) 170650, ¶ 62. Further, we found in *Willhite*: "Rule 431(b) has no requirement that the trial court ask separate questions of the jurors about each individual principle. [Citation.] Nor does the rule require separate, individual answers from each juror." *Willhite*, 399 Ill. App. 3d at 1196-97.

¶ 20        Defendant argues our rationale in *Willhite* is based solely on an earlier vacated version of *People v. McCovins*, 399 Ill. App. 3d 323, 928 N.E.2d 486 (2010), *vacated*, 239 Ill. 2d 574, 940 N.E.2d 1151 (2011). This is not new. We addressed the identical argument in *Kinnerson*, where, after noting the absence of language in both *Thompson* and Rule 431(b) requiring individual questions to each juror regarding each principle, we found, "[c]ontrary to defendant's assertions on appeal, our rationale in *Willhite* was not solely reliant on an earlier, vacated version of *McCovins*." *Kinnerson*, 2020 IL App (4th) 170650, ¶ 64. Instead, we concluded, as we do again, the plain language of the rule does not require " 'the trial court to ask jurors individually about each principle' or 'receive their answers one by one.' " *Kinnerson*, 2020 IL App (4th) 170650 ¶ 64 (quoting *Willhite*, 399 Ill. App. 3d at 1196). Here, the jurors were asked, in panels of four, if they "understood" each of the *Zehr* principles, and they were provided the opportunity to respond. The trial court then asked if they "will follow those instructions" and gave them each an opportunity to respond as well. This is not a situation like *Sebby*, 2017 IL

- 10 -

119445, ¶ 49, where the trial court asked prospective jurors if they " 'had any problem with' " or " 'believed in' " the principles, or that of *Belknap*, 2014 IL 117094, ¶ 44, where the court asked one of three variations— whether prospective jurors "disagreed with," "had any quarrel with," or "accepted" the principles, or *Wilmington*, 2013 IL 112938, ¶ 32, where the court asked if any of the jurors disagreed with each principle. In each of those cases, the primary dispute was with a failure to ask if the jurors "understood" the principle in conjunction with other options noted above. In the matter before us, the trial court expressly asked if the jurors "understood" the four principles and, we submit, asking if they will "follow" the principles is the functional equivalent of asking if they "accept" them. This same questioning passed muster in *Wilhite* and does so again. We still encourage trial courts to simply read the language of Rule 431(b) and avoid the issue entirely.  When trial courts ask prospective jurors if they "accept" a principle, it is not some philosophical inquiry into their morality but an effort to determine whether they are willing and likely to follow the instructions on that principle. Although that may be the ultimate goal, *Zehr* and Rule 431(b) use the term "accept" and trial courts would do well to do the same. Defendant's complaint regarding the exact manner of questioning, *i.e.*, that by including the comment "isn't that correct?" the trial court somehow overbore the free will of what we must assume was a reasonably intelligent venire, we find to be so picayunish as to warrant no comment. These belated claims of *Zehr* violations are not going to force us to devolve into an analysis of voice tone and inflection. There was no error with the trial court's Rule 431(b) admonishments. Without error, there is no need to proceed further with a plain error analysis. See *People v. Hood*, 2016 IL 118581, ¶ 18, 67 N.E.3d 213 (without error there can be no plain error).

¶ 21                           B. Defendant's Sixth Amendment Claim

¶ 22    Defendant next argues his constitutional right to a public trial was violated when, during jury selection on the first day of trial, the trial court excluded some unknown person from defendant's church who was present "for support" when he was caught interacting and shaking hands with one of the jurors as they were being excused for lunch.

¶ 23    Here, the trial court removed an individual because of his inappropriate interactions with a juror. This is more akin to the removal of an unruly spectator, similar to the situation in *People v. Cooper*, 365 Ill. App. 3d 278, 282-83, 849 N.E.2d 142, 146-47 (2006), which discussed "partial closure" within the context of excluding several family members of the defendant due to their behavior before the jury. There, this court noted the presumption against removal may yield to an "overriding interest that is specifically articulated." (Internal quotation marks omitted.) *Cooper*, 365 Ill. App. 3d at 282. We also found the standard to be applied when determining the sufficiency of the record to support a trial judge's exclusion of a disruptive individual from the courtroom is whether there has been an abuse of discretion. *Cooper*, 365 Ill. App. 3d at 282.

¶ 24    In the case before us, one person, not related to defendant and identified only as someone from his church who was present for "support," was seen shaking hands and interacting in some fashion with one of the jurors being excused for lunch. There is no indication anyone else was excluded or that defendant opposed the removal of the person interfering with a juror. The trial transcript reveals after the second panel of jurors had been selected and sworn, they and the remaining venire were being released for lunch when the following conversation occurred:

    "THE COURT: Mr. Dill [(defense attorney)], who is that

    gentleman that's shaking hands with one of my jurors?

    MR. DILL: Judge, this is a man that I met this morning

- 12 -

who goes to church with my client and he's here for support.

That's—.

THE COURT: Sir, you're excused from this trial. I don't expect to see you here again. You do not interact with my jurors.

We will be in recess."

¶ 25 When they reconvened, the court made no further comment. The "overriding interest" was "specifically articulated" by the trial court when confronting counsel and addressing the individual. He was being removed for directly interacting with what we can surmise was one of the jurors who had already been selected and sworn since the court referred to "one of my jurors." The "overriding interest" here was to ensure a trial with fair and impartial jurors, something one would assume was important to defendant as well, unless, of course, he was hoping for some level of bias or influence generated by the supporter's interaction with the juror with whom he was seen shaking hands.

¶ 26 Of note once again, defendant did not object. His counsel did not include this issue in a lengthy and detailed posttrial motion. Instead, we see it for the first time on appeal, as if sprung full-grown from the forehead of Zeus and argued as if the court conducted a wholesale evacuation of the courtroom. Our remarks should not be construed or misconstrued as some comment on a defendant's legitimate and necessary right to appeal. They are not. Instead, they highlight once again the fact that the issue was not of concern to defendant or his counsel, but appears now, exaggerated beyond what the record reveals. This was not a "closing" of defendant's public trial. The extent of the closure, or more accurately, eviction, would fall under the "triviality standard" of *Peterson v. Williams*, 85 F.3d 39, 42 (2d Cir. 1996). A triviality standard, properly understood, looks to whether the actions of the court and the effect that they

- 13 -

had on the conduct of the trial deprived the defendant—whether otherwise innocent or guilty—of the protections conferred by the sixth amendment. *Williams*, 85 F.3d at 42.

¶ 27 Our supreme court recently analyzed the public trial issue in *People v. Radford*, 2020 IL 123975, where a defendant contended the trial court erred by partially closing the courtroom during jury selection when it filled the courtroom with prospective jurors, leaving only enough space for two members of the defendant's and the victim's families. The court discussed at length the sixth amendment right to public trials, noting, "[a] contemporaneous objection is particularly crucial when challenging any courtroom closure" and the failure to object deprives a trial court of the opportunity to explain its justification or develop an alternate plan. *Radford*, 2020 IL 123975, ¶ 37. More importantly, the court stated, "This need to lodge a contemporaneous objection to a courtroom closure also prevents a defendant from potentially remaining silent about a possible error and waiting to raise the issue, seeking automatic reversal only if the case does not conclude in his favor." *Radford*, 2020 IL 123975, ¶ 37.

¶ 28 In *People v. Evans*, 2016 IL App (1st) 142190, ¶ 11, 69 N.E.3d 322, the First District "assume[d] that preventing juror contamination [wa]s an 'overriding interest' " when evaluating the effect of removing an individual—in that case, the defendant's step-grandmother. See also *Waller v. Georgia*, 467 U.S. 39, 48 (1984). It was the inability to show efforts at contamination which doomed the trial court's decision to exclude her from witnessing *voir dire*. *Evans*, 2016 IL App (1st) 142190, ¶¶ 11-12. In *People v. Willis*, 274 Ill. App. 3d 551, 554, 654 N.E.2d 571, 574 (1995), the trial court was found to have erred by barring defendant's family members from *voir dire* to prevent contamination of prospective jurors, without evidence. The situation before us is not the one to which defendant alludes in his citation of *Presley v. Georgia*, 558 U.S. 209, 215 (2010). *Presley*, as well as *Willis* and *Evans*, involved "perceived" possible

- 14 -

risks of jury contamination. Here, the trial court witnessed the spectator having contact and communicating directly with a juror as they were being escorted out of the courtroom. Once the court excluded him from the trial, neither defendant nor his counsel voiced an objection, sought to make a record, or sought an explanation. Allowing them to do so now would only encourage the behavior *Radford* decried. Further, as the *Radford* court noted, "not every courtroom closure [(as opposed to a mere expulsion)] results in an unfair trial, nor does each closure effect the values underlying the sixth amendment's public trial guarantee." *Radford*, 2020 IL 123975, ¶ 33 (citing *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1909-10 (2017)). Defendant can point to nothing the removal of the interfering "supporter" did to "erode the integrity of the judicial process and undermine the fairness of the defendant's trial," a definition of the sort of second-prong structural error which might otherwise entitle him to "plain error" analysis. (Internal quotation marks omitted.) *Thompson*, 238 Ill. 2d 598, 613-14. The defendant has the burden of persuasion under both prongs of the plain error doctrine, and if he fails to satisfy his burden of persuasion, as he did here, "the procedural default will be honored." See *People v. Hillier*, 237 Ill. 2d 539, 545, 931 N.E.2d 1184, 1188 (2010), and *People v. Eppinger*, 2013 IL 114121, ¶ 19, 984 N.E.2d 475.

¶ 29                                    C. Victim's Rebuttal Testimony

¶ 30         Defendant next argues the trial court's decision to permit the victim to be recalled by the State as a rebuttal witness was error. Defendant accurately notes we review the discretionary admission of rebuttal testimony under an abuse of discretion standard. *People v. Woods*, 2011 IL App (1st) 091959, ¶ 26, 952 N.E.2d 105. Indeed, it is within the trial court's discretion whether to allow rebuttal testimony and that determination will not be disturbed absent "a *clear* abuse of discretion." (Emphasis added.) *People v. Harris*, 231 Ill. 2d 582, 588, 901

N.E.2d 367, 370 (2008). "An abuse of discretion will be found only where the trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court." *People v. Caffey*, 205 Ill. 2d 52, 89, 792 N.E.2d 1163, 1188 (2001).

¶ 31 After defendant testified on his own behalf, the prosecutor indicated it was his intention to recall the victim. Defendant objected, contending the same topics were already covered by the victim and defendant, and since nothing new had been brought up by defendant's testimony, there was no legitimate basis for recalling the victim other than to allow her to repeat her emotional testimony before the jury.

¶ 32 The trial court noted several areas where their testimony had differed but made it clear to the State: "[I]ts going to be really limited ***. Again, we're not going back over this all again. [Defense counsel] has a point. You can ask some specific questions where you think they are rebutting the testimony that was presented."

¶ 33 After a recess, the trial court reiterated, "[R]ebuttal is going to be brief. There are very few, as I recall the testimony, things that could be rebutted by the victim testifying." It is clear from the record the trial court thought there were several areas where rebuttal testimony was proper but was careful to note the "really limited" nature of rebuttal evidence it would allow the State to elicit from the victim. In fact, during the necessarily leading questioning by the State at one point, when the State instructed the witness to "[t]ell the jury what happened," the court immediately stepped in, addressing the State: "No ***. The answer is either yes or no," requiring the State to keep the inquiry specific and limited. In addition, as defense counsel repeatedly objected to "asked and answered" questions, the court was quick to note to the prosecutor when his questioning went beyond the limited bases for rebuttal.

¶ 34 The proper use of rebuttal evidence is to "explain, contradict or disprove

- 16 -

defendant's evidence." *People v. Hood*, 213 Ill. 2d 244, 259, 821 N.E.2d 258, 266 (2004). This is true even if the evidence was such that it would have been admissible as part of the State's case in chief. *People v. Lucas*, 132 Ill. 2d 399, 434, 548 N.E.2d 1003, 1017 (1989). Defendant relies heavily on *People v. McGhee*, 20 Ill. App. 3d 915, 314 N.E.2d 313 (1974), a case easily distinguished from the one before us. In *McGhee*, the defendant appealed from his bench trial for battery, resisting arrest, and aggravated battery, claiming rebuttal evidence presented by the State was admitted improperly. The First District found the "rebuttal evidence was offered by the State to contradict defendants' testimony concerning [the officers'] conduct in the lockup after the altercation for which [the defendants] were being tried." *McGhee*, 20 Ill. App. 3d at 923. This was collateral to the substantive issues at trial since the behavior for which defendant was on trial occurred before the incidents in the lock-up after his arrest. Further, the trial court's comments revealed it resolved credibility issues raised by the conflicting testimony based on the improper rebuttal evidence.

¶ 35          Here, the court strictly limited the prosecutor both as to topic and extent of examination, to address only those issues which would tend to " 'explain, repel, contradict or disprove evidence of the defendant.' " *Hood*, 213 Ill. 2d at 261 (quoting *Lucas*, 132 Ill. 2d at 434). The areas of inquiry were limited to interaction between the victim and defendant while at the hotel where defendant testified the victim "slow danced" with him, a claim by defendant he had prearranged plans for the next day with the victim, a claim by defendant of a number of planned dates which had to be cancelled due to work, and defendant's claim the victim sang him a song and provided a "lap dance" while they were parked outside his residence.

¶ 36          Considering this case was a credibility contest between the victim and defendant as to what transpired between the two of them while parked in a vehicle, claims by defendant to

a preexisting or more personal relationship with the victim than that to which she testified was clearly relevant to the allegations and not a collateral matter as in *McGhee*. Her testimony directly contradicted defendant's claim of a slow, romantic dance at the hotel, his claim they had plans for the next day, or that there had ever been planned dates previously. It also explained the only time she sang a song was earlier in the evening when they were all heading to a restaurant, and she did not willingly wind up on defendant's lap in the car.

¶ 37        The trial court was careful to limit the length and area of inquiry to those specific assertions made by defendant during his testimony and most of defense counsel's objections were sustained. The victim's testimony can in no way be characterized as "improperly bolstering her credibility." Instead, it addressed the inference raised by defendant during his testimony about the nature of the relationship between defendant and the victim, which was intended to buttress his claim of consensual behavior.

¶ 38        We do not find the court's admission of limited rebuttal testimony here to be arbitrary, fanciful, or unreasonable.

¶ 39                        D. Prosecutor's Comments During Closing Argument

¶ 40        Defendant also contends he failed to receive a fair trial due to comments made by the prosecutor during closing argument. Defendant claims the prosecutor misstated the law, shifted the burden of proof to the defense, and improperly vouched for the credibility of the victim. We consider whether a prosecutor's comments during closing argument are sufficiently egregious to require a new trial as a legal issue subject to *de novo* review. *People v. Anderson*, 2018 IL App (4th) 160037, ¶ 47, 102 N.E.3d 260. In *People v. Wheeler*, 226 Ill. 2d 92, 122, 871 N.E.2d 728, 744 (2007), our supreme court clearly indicated its intent to "reaffirm our intolerance of prosecutorial misconduct." It first acknowledged, however, "[p]rosecutors are

afforded wide latitude in closing argument" and reversal and retrial are not warranted unless the improper remarks "constituted a material factor in a defendant's conviction." *Wheeler*, 226 Ill. 2d at 123. In *Anderson*, we noted closing arguments are to be viewed in their entirety and remarks claimed to be improper must be considered " 'within the context in which they were conveyed.' " *Anderson*, 2018 IL App (4th 160037, ¶ 48 (quoting *People v. Lewis*, 2017 IL App (4th) 150124, ¶ 67, 78 N.E.3d 527). Further, when the comment is based on reasonable inferences to be drawn from the evidence or invited by the closing argument of the defense, then it may sometimes be possible for otherwise improper argument to survive a claim of error. *Anderson*, 2018 IL App (4th) 160037 ¶ 62; see also *Bell*, 2020 IL App (4th) 170804, ¶ 134 (finding a prosecutor's statements will not be held improper if provoked or invited by defense counsel's closing argument).

¶ 41　　　　We note all the comments of which defendant complains are contained in the State's rebuttal argument. Regarding the "burden-shifting" comment, defendant asserts in his brief that "the prosecutor first raised the issue that [the victim] would not levy these allegations for no reason." Thus, although defense counsel replied by stating he did not know the answer to the factual question of why the victim would make false allegations, this argument did not permit the prosecutor to respond with repeated and incorrect statements of law that shifted the burden of proof to defendant. One small problem—there was no comment by the prosecutor in his initial closing about how the "victim would not levy these allegations for no reason" and the record cited by defendant is to the final comment of the prosecutor's rebuttal argument.

¶ 42　　　　A careful reading of the State's initial closing argument reveals it focused on the two different versions of what happened and discussed the credibility determinations the jury was being required to make. It was the defense who first brought up the idea of "why would she

- 19 -

make this up," although he attributed it to the prosecutor. The closest thing said was one isolated comment, when the prosecutor was describing *defendant's* version of his interaction with the victim on the night in question:

> "This [*sic*] I kissed her and she fell into my arms overcome with cries of passion and pleasure. And then things stopped and we just went our separate ways and she drives home, and suddenly she apparently for no reason claims sexual assault."

He then went on to discuss other aspects of defendant's testimony.

¶ 43    During the defense closing, however, counsel said:

> "[The prosecutor] alluded to the fact why would she make this up? Why would anyone make up these allegations? Why would they do this? I don't know. We don't know. We certainly don't—no one has to prove why someone would come into court ***. We don't have to prove that, but why? Why would she make that up? Every day you read the newspaper. Terrible things happen. People lie. People do terrible thing to other people, and most of the time we don't know why. There's no answer to that question, but the evidence has shown you that's exactly what happened here. That's exactly what happened."

¶ 44    It was in response to *these* comments that the prosecutor, in his rebuttal argument, said:

> "Counsel brings it up and we have to address it. Why? Why, why, why, why, why is [victim] saying this happened? Counsel says I have no idea. I will give you a spoiler right now and

say I do. Here is the answer. It is because it happened. She is saying it happened because it happened. Now for you to disbelieve [the victim]—for you to disbelieve [the victim] I think you should have some reason for her to have made this up."

¶ 45        There was an objection interposed by defense counsel and overruled by the court. The prosecutor continued: "For you to disbelieve her I suggest you have to have some reason why she would have made it up, and this is why. Did that look like fun? When [the victim] was on the stand, when she shared this with you, did that look like fun?"

¶ 46        There was no objection to this comment. To support defendant's claim of "burden shifting," defendant's brief parsed the prosecutor's words during his rebuttal argument, omitting an intervening objection and reciting only portions of a sentence.

¶ 47        Regardless, the comments were obviously in response to defendant's closing argument and are not improper. As noted by the State, our supreme court outlined the difference between a permissible argument concerning the credibility of a witness and an impermissible one in *People v. Banks*, 237 Ill. 2d 154, 184-185, 934 N.E.2d 435, 452 (2010). Citing its previous decision in *People v. Coleman*, 158 Ill. 2d 319, 633 N.E.2d 654 (1994), the supreme court distinguished between a situation "where a prosecutor improperly argues that a jury would have to believe the State's witnesses were lying in order to *acquit* defendant," and a permissible argument where the State argues "a jury would have to believe the State's witnesses were lying in order to *believe* the defendant's version of events." (Emphasis in original.) *Banks*, 237 Ill. 2d at 185.

¶ 48        "Statements must be considered in the context of closing arguments as a whole, and the State can reasonably respond in rebuttal to the defense's characterization of the evidence

or case." *People v. Miller*, 2020 IL App (1st) 163304, ¶ 48. Here, the State's only reference to a "claim" of sexual assault was in the context of defendant's version of events that evening. The defense then laid out a scenario to explain why someone might lie, and the State's comments were a legitimate response. They did not go nearly as far as those considered proper in *Coleman*.

¶ 49 Defendant further claims the State sought to "shift the burden of truth" with the prosecutor's final statement during rebuttal:

"The only explanation for those facts or those circumstances and for her going through this and saying things she did that day are true. That is why she is saying it, and there is no other explanation and there is no other explanation offered. The explanation is this: The defendant is guilty and he should so be found."

¶ 50 In addition to the fact there was no objection, the comment is in direct response to one made by defense counsel, "Why would anyone make up these allegations? Why would they do this? I don't know," followed by defense counsel's assertion that "people lie." In context, the comment appears directed more toward the victim than defendant. The prosecutor was arguing the one and only explanation to be offered on her behalf was that she was telling the truth. There is nothing about the prosecutor's comment which shifts the burden of proof, and as a comment on a matter raised by defendant, it is proper under the circumstances. See *Bell*, 2020 IL App (4th) 170894, ¶ 134. "It is permissible for a prosecutor to comment on the uncontradicted nature of the State's case even where the only person who could have contradicted the State's evidence was the defendant himself." *People v. Reno*, 32 Ill. App. 3d 754, 759, 336 N.E.2d 36, 39 (1975). Here, there was no effort to comment on defendant's lack of evidence, or some claimed "burden," but merely a response to defendant's closing argument.

¶ 51 Defendant's final claim is that the prosecutor "personally vouched for and

expressed his personal opinion on [the victim's] credibility and motives for testifying" when he responded to counsel's argument in rebuttal as set forth above. Based on the comment and the context in which it occurred, defendant's interpretation is both incorrect and extreme. Using defendant's logic, if the prosecutor used the first-person singular pronoun, in any context in closing argument, he has somehow now "personally vouched for and expressed his opinion." Prosecutors are permitted to include some degree of both sarcasm and invective to express their points. *Banks*, 237 Ill. 2d at 183. Further, " 'even improper remarks [by a prosecutor] do not merit reversal unless they result in substantial prejudice to the defendant.' " *People v. Shaw*, 2016 IL App (4th) 150444, ¶ 70, 52 N.E.3d 728 (quoting *People v. Cosmano*, 2011 IL App (1st) 101196, ¶ 57, 964 N.E.2d 87). "A closing argument must be viewed in its entirety, and the challenged remarks must be viewed in their context." *People v. Glasper*, 234 Ill. 2d 173, 204, 917 N.E.2d 401, 420 (2009). The attorneys focused their arguments on the credibility of the parties and it was in that context the comments were made. None of the comments were improper and therefore there was no error.

¶ 52 Absent error, there is no need to consider defendant's plain error claim regarding those comments for which there was no objection or reference in his posttrial motion. *People v. Jackson*, 2020 IL 124112, ¶ 88 ("Without reversible error, there can be no plain error.").

¶ 53 III. CONCLUSION

¶ 54 For the reasons set forth above, we affirm the trial court's judgment.

¶ 55 Affirmed.