*In re* J.F., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. J.F., Respondent-Appellant).

Second District    No. 2—98—1572

Opinion filed April 7, 2000.

Jed H. Stone and John Curnyn, both of Law Offices of Jed Stone, Ltd., of Chicago, for appellant.

Michael J. Waller, State's Attorney, of Waukegan (Martin P. Moltz, of State's Attorneys Appellate Prosecutor's Office, of counsel), and Philip B. Alfeld, of Alton, for the People.

JUSTICE McLAREN delivered the opinion of the court:

The respondent, J.F., a minor, appeals his adjudication of delinquency and sentence after he was found responsible for aggravated battery. We affirm.

The following facts are uncontroverted. The 14-year-old respondent and his 15-year-old friends, J.D and Z.D., spent the night at the respondent's grandparents' home in Waukegan, Illinois, on September 6, 1998. After the boys played Nintendo and watched part of the movie *Titanic*, the respondent said to his friends, "Do you want to see something cool?" The respondent then got a B.B. gun from a locked file cabinet and showed it to the two other boys. All three boys then snuck out of a window to avoid waking the respondent's grandfather. They went to a fence in the backyard of the house, and J.D. threw golf balls at two people on Yorkhouse Road. J.D. did not hit anyone with the balls. Z.D. threw rocks at cars.

J.D. testified to the following: that the respondent, having brought the B.B. gun outside, said to the other boys, "I'm going to wait for a car." On cross-examination, J.D. stated that the more accurate statement by the respondent was, "I'm going to try to hit a car." The boys could not see what was on the other side of the fence. The headlights of a car on Yorkhouse Road were visible through the slats of the fence but not the actual car. As the car went by, the respondent stuck the B.B. gun through a hole in the fence, looked through the fence, and pulled the trigger once. The car then slowed down, and the boys went back to the house. The respondent then wiped off the gun, stating

that he did not want fingerprints on the gun, and put it back in the file cabinet.

The victim's father testified that, on the evening of the shooting, he was driving on Yorkhouse Road with his daughter, Valerie, age eight, in the front passenger seat. Valerie's window was open. As they traveled westbound on Yorkhouse Road, the B.B. went through the open window and struck Valerie in the right eye. Valerie's father and mother, who was following her husband in another vehicle, drove to Newcastle Road and then made a U-turn back onto Yorkhouse Road. They stopped to examine their daughter's eye and phoned the police on a cellular phone. Valerie lost her right eye.

When the boys heard the police, they climbed back into the window of the respondent's grandfather's house and went to bed. They did not know that Valerie had been injured.

J.D. later told the police what the boys had done that night. According to J.D., after the respondent learned what had happened, the respondent stated that he could not believe that he had hit Valerie and the respondent seemed really sad and sorry for what he had done.

On September 14, 1998, the Lake County State's Attorney filed a two-count petition for adjudication of wardship alleging that the respondent was a delinquent. 705 ILCS 405/5—3 (West 1998). Count I alleged aggravated battery with a firearm (720 ILCS 5/12—4.2(a)(1) (West 1998)), and count II alleged aggravated discharge of a firearm (720 ILCS 5/24—1.2(a)(2) (West 1998)). The State's Attorney later withdrew these counts and filed three different counts. Count III alleged reckless conduct (720 ILCS 5/12—5(a) (West 1998)), count IV alleged aggravated battery (intentionally or knowingly causing great bodily harm) (720 ILCS 5/12—4(a) (West 1998)), and count V alleged aggravated battery (on a public way) (720 ILCS 5/12—4(b)(8) (West 1998)). The respondent was remanded to the custody of the Lake County Youth Detention Center.

On October 13, 1998, after hearing the evidence, the trial court stated that it found that the respondent acted knowingly. The trial court stated the following:

"Again, based on the testimony, it is not an intentional act that we are talking about. It's that [the respondent] acted knowingly, and knowledge is proven by established facts and inferences drawn from those facts, and the evidence presented was that [the respondent] took a pellet gun out of the locked cabinet. Pellets were in the gun. He stood at the fence, put it in a hole, and then the testimony from the person there was that he put it in the hole and was trying to hit a car.

When he pulled that trigger, knowing the lights were going by

from a car, the inference from that is an established fact or knowledge that a car doesn't drive itself; that there are people in that car, which establishes the knowledge element, and based on all of the other testimony, the Court will find [the respondent] responsible for Count II—or excuse me, Count III, IV, and V."

After hearing testimony and arguments regarding sentencing, the trial court stated the following:

"I don't consider this just some juvenile prank. It is a very serious act that was committed. Just shooting at the back of the fence is a juvenile prank, but when you put that gun in a hole in the fence, knowing that it had pellets in it, and you waited because your intent was to hit a car, it goes beyond a juvenile prank.

* * *

I don't think you tried to hurt this girl, but when you shot the gun, as I said, you knew it could hurt someone; and so for that reason, I am going to put you on intensive probation."

The assistant State's Attorney then asked the court for clarification by stating:

"Judge, I was asking the Court, just for clarification, that you found the minor responsible for Counts III, IV, and V because I was concerned whether there was an inconsistent mental state between count III and then Counts IV and V—I'm sorry between Count III and Counts IV and V."

In response, the court stated:

"Judgment will enter on Counts IV and V. Judgment will only enter on an aggravated battery, since there are two aggravated batteries: Count IV being great bodily harm; Count V is that she was on a public way, so judgment will enter on Count IV. *** Judgment enters on Count IV only."

However, the order of adjudication and disposition, signed by the trial court and entered the same day the court made the statements above, stated that the respondent was found responsible for "AGGRAVATED BATTERY (2 COUNTS) & RECKLESS CONDUCT." The docketing sheet stated that "the State proved counts 3, 4, and 5 of the petition and that the minor is responsible—judgment for count 4 only."

In the respondent's motion to reconsider, counsel acknowledged that, although the trial court found the respondent responsible for reckless conduct and both counts of aggravated battery, the trial court entered judgment only on count IV—aggravated battery (serious bodily harm). The respondent urged the court to vacate its judgment finding him responsible for count IV. After hearing arguments, the trial court vacated its finding regarding the reckless conduct charge but not the aggravated battery charge. The respondent filed this timely appeal.

On appeal, the respondent argues that the trial court made legally

inconsistent findings of both reckless conduct and aggravated battery. According to the respondent, these findings are inconsistent because aggravated battery requires knowing conduct (see 720 ILCS 5/12—4(a) (West 1998)) and the offense of reckless conduct does not (see 720 ILCS 5/12—5(a) (West 1998)). The respondent contends that, since the trial court's findings arose from the same conduct, the findings are inconsistent and the trial court did not have the authority to correct the inconsistency. The State argues that the trial court did not render legally inconsistent findings and that, even if it did, a new trial is not warranted because the trial court was not confused and it corrected the alleged error.

■ We agree with the respondent that knowledge and recklessness are mutually inconsistent culpable mental states. See *People v. Fornear*, 176 Ill. 2d 523, 531 (1997). However, it is well settled that, in a bench trial, if there is a rational basis for the court's judgment and if an examination of the record as a whole indicates that there was not confusion, legally inconsistent findings by a trial judge may stand. *People v. Rhoden*, 299 Ill. App. 3d 951, 961 (1998).

■ In the case at bar, the record indicates that the trial court was not confused. It repeatedly stated that the respondent committed the acts at issue with knowledge. We acknowledge that the trial court appeared to be confused by its order of adjudication. However, the record reveals that the trial court entered judgment on only one count of aggravated battery. Further, the trial court resolved the confusion, if any, when it vacated its finding regarding the reckless conduct charge. In addition, the record contains ample evidence to support the court's decision. Accordingly, the trial court's alleged confusion does not warrant a new trial.

The respondent's citation to *People v. O'Neil*, 194 Ill. App. 3d 79 (1990), is misplaced. In *O'Neil*, the trial court entered judgment on guilty findings of both murder and reckless conduct charges and did *not* correct its error by vacating judgment on one of the charges. *O'Neil*, 194 Ill. App. 3d at 81. Here, the trial court entered judgment on only one count of aggravated battery and did not enter judgment on the reckless conduct charge. Further, the trial court later vacated its finding regarding the reckless conduct charge. Thus, *O'Neil* is not controlling here.

*People v. Fornear*, 176 Ill. 2d 523 (1997), also cited by the respondent, is not controlling here, because, unlike the case at bar, *Fornear* involved a jury verdict. Unlike a legally inconsistent jury verdict, a legally inconsistent finding in a bench trial is not reversible error *per se*. *Rhoden*, 299 Ill. App. 3d at 960.

"This is so because a court reviewing a jury verdict generally lacks

a sufficient basis to determine if the jury was confused. However, a reviewing court, by examining the trial record, may often ascertain whether a judge sitting as finder of fact was confused in making his or her disposition of a charge or charges." *Rhoden*, 299 Ill. App. 3d at 960.

Further, the *Fornear* court reasoned that " 'a trial judge may not usurp the function of a jury by second-guessing "which of the two verdicts was intended by the jury and which was a result of some misconception." ' [Citation.]" *Fornear*, 176 Ill. 2d at 534. This reasoning does not apply here because there was no jury. Thus, the trial court did not second-guess anyone; instead, it simply clarified its own decision. Accordingly, *Fornear* is not controlling here.

For these reasons, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

BOWMAN, P.J., and GALASSO, J., concur.