# Illinois Official Reports

## Appellate Court

---

### *People v. Boyd*, 2021 IL App (1st) 182584

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LAWRENCE BOYD, Defendant-Appellant. |
| District & No. | First District, Fourth Division<br>No. 1-18-2584 |
| Filed | June 24, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 16-CR-10226; the Hon. Domenica A. Stephenson, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd, Douglas R. Hoff, and Emily E. Filpi, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg and Andrew D. Yassan, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE LAMPKIN delivered the judgment of the court, with opinion.<br>Presiding Justice Gordon and Justice Martin concurred in the judgment and opinion. |

**OPINION**

¶ 1    Following a bench trial, defendant, Lawrence Boyd, was convicted of armed robbery while armed with a firearm (720 ILCS 5/18-2(a)(2) (West 2014)), armed robbery while armed with a dangerous weapon other than a firearm, to wit: a bludgeon (*id.* § 18-2(a)(1)), aggravated battery causing great bodily harm (*id.* § 12-3.05(a)(1)), two counts of aggravated battery with a deadly weapon (*id.* § 12-3.05(f)(1)), and aggravated battery on a public way (*id.* § 12-3.05(c)). Defendant was acquitted of a single count of aggravated unlawful restraint (*id.* § 10-3.1).

¶ 2    After the trial court denied defendant's motion for new trial, the case proceeded to a sentencing hearing. Before the imposition of sentence, however, defendant requested a "stay" in order to assert a claim of ineffective assistance of counsel. *Krankel* counsel (see *People v. Krankel*, 102 Ill. 2d 181 (1984)) was appointed to represent him and, acting in such capacity, filed a second motion for new trial. This second motion for new trial claimed, *inter alia*, that trial counsel was ineffective for failing to object to the trial court's entry of judgment on both count I, which alleged armed robbery with a firearm, and count II, which alleged armed robbery with a dangerous weapon, other than a firearm, to wit: a bludgeon.

¶ 3    The trial court denied the motion and, after holding a second sentencing hearing, imposed sentence only on count I. Defendant was sentenced to 17 years in prison for the armed robbery and an additional 15 years for possessing a firearm pursuant to the mandatory sentencing enhancement provision of section 18-2(b) of the Criminal Code of 2012 (720 ILCS 5/18-2(b) (West 2014)).

¶ 4    On appeal, defendant alleges that (1) the evidence was insufficient to support his armed robbery conviction beyond a reasonable doubt, (2) trial counsel rendered ineffective assistance of counsel where he failed to object to the entry of legally inconsistent judgments, and (3) his 32-year sentence is excessive.

¶ 5    For the reasons that follow, we affirm both defendant's conviction and sentence.

¶ 6                                    I. BACKGROUND

¶ 7    On November 23, 2015, at approximately 10 p.m., Marlante Jackson was at his home at 5501 West Washington, preparing to go to his job at UPS. His girlfriend and the mother of his child, Desiree Weaver, was at home with him. Seated behind the security guard desk of the building's lobby, Marlante saw an individual whom he would later identify as defendant, Lawrence Boyd.

¶ 8    As Marlante walked to his car, defendant approached him and asked Marlante whether he knew Desiree. When Marlante replied that he did not, defendant said "Yes, you do, because Thomas told me." At trial, testimony would establish that "Thomas" is Desiree's brother.

¶ 9    Defendant then grabbed Marlante and began choking him. In the process, defendant pulled a gun from his "side" and pinned Marlante against his car by shoving his elbow into Marlante's neck. Marlante—who had previously seen, handled, and fired guns at a gun range—testified that defendant's gun was a chrome .38-caliber revolver, about 12 to 14 inches in length, and that it was made of steel.

¶ 10    When Marlante tried, without success, to grab the gun from defendant's right hand, defendant shoved Marlante up against his car and struck Marlante's face with the barrel of the

gun several times. Marlante's face began to bleed, felt heavy, and started to go numb. While defendant held Marlante pinned against the car, a second man went through Marlante's pockets, taking Marlante's house keys, phone, wallet, and $20. Defendant then told Marlante to get into his car and drive away or else defendant would shoot him.

¶ 11    Marlante got into his car and drove to his mother's house. The drive was difficult for Marlante because he was unable to see clearly since his face was covered in blood.

¶ 12    In response to seeing Marlante speeding and failing to stop at a stop sign, Officers John Hanlon and David Milligan activated their squad car's emergency lights and sirens and followed Marlante to his mother's house. The officers approached Marlante as he was knocking on his mother's back door and noticed that Marlante's face was covered in blood and that he was injured. Although Marlante appeared disoriented and dazed, and had difficulty answering simple questions, he related what had happened, telling the officers that the assailant had a black .38-caliber firearm.

¶ 13    Paramedics transported Marlante to Loretto Hospital, and he was later transferred to Mount Sinai Hospital, where he was hospitalized for about three days with a fracture near his left eye. Marlante testified that as a result of this incident, he had permanent scars on the inside edge of his left eyebrow, the arch of his right eyebrow, and persistent numbness in his head. Photographs of Marlante's injuries were admitted in evidence.

¶ 14    Upon returning home from the hospital, Marlante spoke with Desiree and looked at photographs on Facebook. During the armed robbery, defendant told Marlante that Desiree was his ex-girlfriend. Marlante then provided defendant's name to Detective Matias.

¶ 15    Marlante testified that he was shown a photo array at his home. The parties stipulated, however, that after Marlante provided defendant's name to Detective Matias, Marlante was shown a single I-CLEAR photograph of defendant, from which he positively identified defendant. An investigative alert was then issued for defendant.

¶ 16    At trial, Marlante denied that he initially told the police that the gun was black. His testimony was later impeached by Officer Hanlon, whose police report indicated that the gun was described as black in color.

¶ 17    The parties stipulated that Officer Scott Liedtke would testify that on June 10, 2016, while conducting a gambling investigation at 4841 West Monroe Street, a name check revealed the existence of the investigative alert, and defendant was arrested at 8:30 that evening. At the time of defendant's arrest, no firearm was recovered.

¶ 18    The following day, June 11, 2016, at Area North Police Headquarters, Marlante identified defendant from a six-person photo array.

¶ 19    After the parties rested, the trial court made the following findings:

"THE COURT: I do find that the complaining witness was credible. There was a discrepancy between the description of the gun, but there's no question that he knew it was a gun. He had testified that he had handled guns many times before because he had gone to the firing range with his brother who had a concealed carry. He was very familiar with guns, and he knew that this was a gun that the defendant had.

There's no question about the identification of the defendant. The complaining witness had an opportunity to see the defendant more than once—he saw him in the lobby, and then he was face-to-face with the defendant, just inches away, when the defendant was holding him and pinning him against the car. And he said that there were

streetlights out, and it was well-lit. I find that he had an excellent opportunity to view the defendant. And not only that, but he made an immediate identification with the photo on Facebook and telling the police officer and showing the police officer the photo from Facebook.

   Based upon all of that, there's a finding of guilty of armed robbery, Count 1; armed robbery, Count 2; aggravated battery, Count 3. There's also aggravated battery, Count 4; and aggravated battery, Count 5; and aggravated battery, Count 6. They were on a public way; they were on Washington Boulevard when the incident occurred. There were injuries to the complaining witness' face as well, and that's borne out by the photographs, the injuries to each eye. The complaining witness also testified to the injuries to his head and the dizziness. And the officer corroborated that, and the photographs corroborate what the complaining witness said happened. The injuries are consistent with what the complaining witness said happened. There's a finding, though, of not guilty of aggravated unlawful restraint."

¶ 20    Defense counsel filed a written motion for new trial. While generally maintaining that the State's evidence failed to establish his guilt on all of the charged counts, the motion was more specific as to count I. Defendant alleged that Marlante's testimony was insufficient to establish that defendant possessed a firearm.

¶ 21    After hearing argument on the motion, the trial court denied the motion and proceeded to sentencing. After hearing evidence in aggravation and mitigation, but prior to imposing sentence, defendant requested a "stay" to assert a claim of ineffective assistance of counsel. The trial court granted defendant a continuance to prepare a motion.

¶ 22    On November 30, 2017, the trial court appointed the Office of the Public Defender to represent defendant and granted trial counsel leave to withdraw. On December 7, 2017, Assistant Public Defender (APD) Wendy Fawcett requested a continuance to review transcripts from the trial.

¶ 23    On February 26, 2018, APD Fawcett filed defendant's second motion for new trial. The motion alleged that trial counsel was ineffective for (1) failing to meaningfully cross examine Marlante Jackson and Officer Hanlon, (2) stipulating to the testimony of Detective Matias, and (3) failing to argue that defendant should not be found guilty of both counts I and II.

¶ 24    With respect to this third claim, the motion averred:

   "The testimony is clear that there was only one instrument used, not two instruments. If the Court finds that the Defendant was not armed with a firearm, and used a bludgeon, there should have been a finding of not guilty on Count 1. If the Court finds that the Defendant was armed with a firearm, there should have been a finding of not guilty on Count 2 due to the statutory language cited above."

¶ 25    Consistent with the claims raised in the written motion, APD Fawcett argued that defendant could not be found guilty of both counts I and II where only one instrument was used to commit the offense. The State offered no argument in response to this claim.

¶ 26    The trial court found that trial counsel was not ineffective. With respect to defendant's contention that he could only be convicted of either count I or count II, the court ruled:

   "THE COURT: Paragraph 7 in the defense motion, that Mr. Fagan failed to argue to the Court that the defendant should not be found guilty on both counts of armed robbery. The Court can find the defendant guilty of both counts of armed robbery. At

time of sentencing, they can be merged. So, it's not ineffective to not argue that. The Court can make findings whether the defense argued it or not based upon the evidence that the Court has heard. So the Court finds that Mr. Fagan's performance did not fall below an objective standard of reasonableness, and there was also no prejudice to the defendant. So your motion for a new trial due to ineffective assistance of counsel is respectfully denied."

¶ 27    The court then granted APD Fawcett's request that the court conduct a new sentencing hearing. When the court determined that the presentence investigation report (PSI) was fundamentally inaccurate, it offered to have a new PSI prepared. Defendant declined the court's offer, and the trial court corrected the inaccuracies in the PSI through a series of questions and answers.

¶ 28    Defendant's criminal history began with a juvenile conviction in case No. 06-JD-0098 for unlawful use of a weapon. As an adult, defendant was convicted of aggravated unlawful use of a weapon and defacing a firearm in case No. 06-C-44142601 and sentenced to probation. In case No. 07-124493401, defendant was convicted of battery and obstructing an officer and sentenced to six months' conditional discharge and 20 days in the Cook County Department of Corrections. In case No. 08-0004101, defendant was convicted of battery and sentenced to serve 60 days in the Cook County Department of Corrections. In case No. 12-CR-2076401, defendant was convicted of unlawful use of a weapon and sentenced to three years' incarceration in the Illinois Department of Corrections.

¶ 29    The State offered certified copies of conviction in case No. 06-C-4414260 and in case No. 12-CR-2076401. Marlante Jackson's victim impact statement was also admitted in aggravation.

¶ 30    Additionally, the State submitted a preliminary hearing transcript that contained testimony from a deputy sheriff, relating a threat that he overheard defendant make to Marlante as defendant was being escorted back to the lockup after his preliminary hearing concluded.

¶ 31    In mitigation, defense counsel argued that defendant had an extensive work history, cared for his two children with whom he resided, and while in pretrial custody, worked for more than a year in Division 11. Defendant, who was 25 years old at the time of this offense, had a high school diploma and attended college for one year, but left in order to work. Since 2009, defendant had stable jobs at Home Depot and Jewel. Defendant had no history of gang affiliation, no mental illness, and was not prescribed any medication. Defendant also owned two properties that he rented out.

¶ 32    Defendant made a statement in allocution in which he generally maintained that the evidence was insufficient to convict him.

¶ 33    In imposing sentence, the trial court considered the corrected PSI information, statutory factors in aggravation and mitigation, and imposed sentence only on count I. The remaining judgments merged with count I. In imposing sentence, the trial court made the following findings:

> "THE COURT: The Court does find—I remember the testimony and I remember this case very well. The Court does find that there is great bodily harm in this case. The great bodily harm being not only the cuts to the eyebrows. I remember the complaining witness indicating how much blood there was. There was stitches. He was in the hospital for three days. He had a broken bone near his eye. The Court finds that that is

sufficient for a finding of great bodily harm, so your sentence will be served at 85 percent pursuant to the statute. In looking at your criminal history, you have several gun violations or convictions in your background and a couple batteries. Granted they are misdemeanors, but it shows violence. You even went to the penitentiary, and it just doesn't look like you are getting it. You had so much potential. You got a high school diploma. You tried one year of college. It is all about the choices that you make. There was—this was just a senseless, senseless act on your part, and now the complaining witness has to live with these reminders every single day. Not that he needs the scars to remind him. I am sure he doesn't. I am sure he doesn't, but what you did was just senseless and for no reason. Absolutely no reason. The Court finds that the minimum sentence isn't appropriate in this matter based upon all of the factors in aggravation and mitigation, and I do want to say I am taking the factors in mitigation into account as well and the statutory factors and also the fact that you don't show even just an ounce of remorse, not one. The Court finds that the sentence in this case is necessary because your conduct did threaten serious harm, you caused serious harm to the complaining witness, that you have a prior history of delinquency or criminal activity and that the sentence is necessary to deter others from committing the same crime and for all of the other reasons I just stated. The Court finds that the appropriate sentence in this case is going to be 17 years on count one plus 15 years for the enhancement of armed—while armed with a firearm. So that's a total of 32 years IDOC to be followed by three years of mandatory supervised release upon your release from the penitentiary. That's going to be served at 85 percent because of the finding of great bodily harm. Fines, fees and costs in the amount of $589. 712 days Cook County Department of Corrections time considered served, time actually served, and you will get $5 per day credit towards any fines that it can be applied towards."

¶ 34                                    II. ANALYSIS
¶ 35                            A. Sufficiency of the Evidence
¶ 36        In his first assignment of error, defendant alleges that the testimony of Marlante Jackson was insufficient to sustain his conviction for armed robbery with a firearm. The due process clause of the fourteenth amendment to the United States Constitution requires that a defendant may not be convicted "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). The standard of review on a challenge to the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *People v. Collins*, 106 Ill. 2d 237, 261 (1985). This standard applies in all cases, regardless of the nature of the evidence. *People v. Pollock*, 202 Ill. 2d 189, 217 (2002). The trier of fact assesses the credibility of the witnesses, determines the weight to be given to their testimony, resolves conflicts in the evidence, and draws reasonable inferences therefrom. We will not substitute our judgment for that of the trier of fact on these matters. *People v. Hommerson*, 399 Ill. App. 3d 405, 411 (2010).

¶ 37        A reviewing court may not retry the defendant. *People v. Rivera*, 166 Ill. 2d 279, 287 (1995). Testimony will only be found insufficient under the *Jackson* standard where the evidence compels the conclusion that no reasonable person could accept it beyond a reasonable

doubt. *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004). Put differently, a defendant's conviction will be reversed only if the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of the defendant's guilt. *People v. Wright*, 2017 IL 119561, ¶ 70.

¶ 38     Under count I of the indictment, the State was required to prove beyond a reasonable doubt that defendant "knowingly took property, to wit: keys, wallet, and mobile phone, from the person or presence of Marlante Jackson, by the use of force or by threatening the imminent use of force and he carried on or about his person or was otherwise armed with a firearm." See 720 ILCS 5/18-2(a)(2) (West 2014). The definition of "firearm" is found in section 1.1 of the Firearm Owners Identification Card Act (FOID Card Act) (430 ILCS 65/1.1 (West 2014)). In pertinent part, it defines a "firearm" as "any device, by whatever name known, which is designed to expel a projectile or projectiles by the action of an explosion, expansion of gas or escape of gas." *Id.*

¶ 39     Whether a defendant possessed a firearm in an armed robbery prosecution is a question of fact for the trier of fact. *People v. Fletcher*, 2017 IL App (3d) 140530, ¶ 28. Proof that a defendant possessed a firearm may be established through the unequivocal testimony of a single witness. *People v. Hunter*, 2016 IL App (1st) 141904, ¶ 16.

¶ 40     In *Hunter*, the court determined that the evidence, viewed in the light most favorable to the state, was sufficient to support the defendant's armed robbery conviction. The testimony established that the victim, who was " 'aware of weapons' " and found to be " 'very credible' " by the trial court, described the gun as " 'squared off' " and resembling a " 'Glock.' " *Id.* ¶ 17. The victim testified that the defendant " 'flashed' " the gun for several seconds during their initial encounter, then pulled it out of his coat, placed it near the victim's chest or stomach, and repeatedly threatened to shoot the victim. *Id.*

¶ 41     As in *Hunter*, we find the evidence here was sufficient for the court to determine that defendant possessed a firearm. Marlante testified that he was familiar with guns, having seen, held, and fired them at a gun range. Additionally, defendant did not merely display the gun, but repeatedly struck Marlante's face with it, with sufficient force to cause a fracture, scarring, and permanent injuries. After beating Marlante with the gun, defendant then threatened to shoot Marlante if he did not get into his car.

¶ 42     Defendant relies on the same impeachment previously considered and rejected by the trial court to support his claim. Resolution of inconsistencies or conflicts in the evidence is the responsibility of the factfinder. *Collins*, 106 Ill. 2d at 262. The trial court's findings reflect a proper discharge of that responsibility where the court acknowledged the discrepancies yet found Marlante credible. The trial court found that there was "no question about the identification" where the victim had multiple opportunities to see defendant and stood "face-to-face" in the "well-lit" area as defendant held Marlante pinned against the car. The court further found that Marlante "made an immediate identification" of defendant. The court noted that there was a discrepancy in Marlante's description of the gun, but found

> "there's no question that he knew it was a gun. He had testified that he had handled guns many times before because he had gone to the firing range with his brother who had a concealed carry. He was very familiar with guns, and he knew that this was a gun that the defendant had."

¶ 43     In addition to declining defendant's invitation to "second-guess" the trial court, we also reject defendant's related claim that the definition of "firearm" contained in the FOID Card

- 7 -

Act was not satisfied by the testimony of the victim in this case. Similar claims were rejected by our supreme court in *People v. McLaurin*, 2020 IL 124563, ¶¶ 32-33, and *Wright*, 2017 IL 119561, ¶ 77.

¶ 44 In *McLaurin*, a police officer testified that she saw the defendant carrying a silver handgun from about 50 feet away. *McLaurin*, 2020 IL 124563, ¶ 4. After defendant's arrest, the officer identified a recovered handgun as the gun she saw the defendant holding. However, the gun was not presented at trial. *Id.* ¶¶ 32, 34. While noting that "[t]he State took a risk by choosing not to introduce into evidence the gun that Rodriguez testified was recovered at the scene and inventoried by police," the court found that such evidence was unnecessary to prove the gun was a firearm. *Id.* ¶ 32. In so ruling, the supreme court rejected the defendant's claim that the FOID Card Act required more evidence than what the State presented, concluding that a single police officer's testimony may be sufficient to prove an object is a firearm. *Id.* ¶¶ 32-38.

¶ 45 In *Wright*, the supreme court rejected the defendant's claim that the evidence was insufficient to establish that the gun used in committing an armed robbery was a firearm. The testimony of the complaining witness, who had prior experience firing guns, and testified that he was 100% sure that the black semiautomatic gun that he saw was an actual firearm, was deemed sufficient to satisfy the definition of "firearm." *Wright*, 2017 IL 119561, ¶ 76. The appellate court in *Wright* held: "The State does not have to prove the gun is a firearm by direct or physical evidence; unequivocal testimony of a witness that the defendant held a gun is circumstantial evidence sufficient to establish that a defendant was armed during a robbery." *People v. Wright*, 2015 IL App (1st) 123496, ¶ 74.

¶ 46 In sum, both *McLaurin* and *Wright* dispel defendant's claim that the definition of "firearm" in the FOID Card Act requires more evidence than what was presented at trial. The testimony of Marlante Jackson was sufficient for the trial court to convict defendant of armed robbery with a firearm.

¶ 47                                   B. Ineffective Assistance of Counsel

¶ 48 Defendant next claims that the court's entry of findings on counts I and II necessitates a new trial. We disagree.

¶ 49 We begin by noting that the parties disagree as to whether this claim was properly preserved below. Resolution of this preliminary question is resolved by considering the procedural history of this case. While trial counsel's failure to object to the entry of judgment would generally result in a procedural default (*People v. Davis*, 205 Ill. 2d 349, 361 (2002)), *Krankel* counsel alleged that trial counsel was ineffective for failing to object to the entry of judgments on counts I and II. In pertinent part, the second posttrial motion alleged:

> "Mr. Fagan failed to argue to the Court that the Defendant should not be found guilty on both counts of armed robbery. Under the statutory language, 720 ILCS 5/18-2(a)(1), 'a person commits armed robbery when he or she violates Section 18-1; and (1) he or she carries on or about his or her person or is otherwise armed with a dangerous weapon other than a firearm.' The testimony is clear that there was only one instrument used, not two instruments. If the Court finds that the Defendant was not armed with a firearm, and used a bludgeon, there should have been a finding of not guilty on Count 1. If the Court finds that the Defendant was armed with a firearm, there should have been a finding of not guilty on Count 2 due to the statutory language cited above."

- 8 -

¶ 50　　At the hearing on defendant's second posttrial motion, *Krankel* counsel argued:

"APD FAWCETT: And finally, Judge, I just would argue that Mr. Fagan failed to argue that [Y]our Honor should not have found Mr. Boyd guilty on both counts of the armed robbery. Under the statutory language 720 ILCS 518-2A1 a person commits armed robbery when he or she violates Section 18-1 and he carries on or about his person or is otherwise armed with a dangerous weapon other than a firearm. The testimony is clear that there was only one instrument that was used. There was a question about whether it was a chrome handgun, whether it was a black handgun, but there was no question that there was only one instrument that was used; and so if [Y]our Honor finds that it was in fact a firearm then Mr. Fagan should have argued before [Y]our Honor that you should not have found him guilty of the second count with statutory language being that the weapon other than a firearm was used. So I would argue that Mr. Boyd should have been found not guilty on one or other of the counts."

¶ 51　　The trial court responded to defendant's assertion:

"THE COURT: Paragraph 7 in the defense motion, that Mr. Fagan failed to argue to the Court that the defendant should not be found guilty on both counts of armed robbery. The Court can find the defendant guilty of both counts of armed robbery. At the time of sentencing, they can be merged. So it's not ineffective to not argue that. The Court can make findings whether the defense argued it or not based upon the evidence that the Court has heard. So the Court finds that Mr. Fagan's performance did not fall below an objective standard of reasonableness, and there was also no prejudice to the defendant. So your motion for a new trial due to ineffective assistance of counsel is respectfully denied."

¶ 52　　A *Krankel* inquiry consists of two stages. See *People v. Moore*, 207 Ill. 2d 68, 77-78 (2003). First, the trial court examines the factual bases of defendant's claims of ineffective assistance of counsel. *Id.* If the court determines that the claim lacks merit or pertains to trial strategy, the appointment of new counsel is not required, and the claim may be denied. *Id.* at 78. If, however, the claim shows possible neglect, the court will appoint new counsel to represent defendant at an adversarial hearing on the claim. *People v. Munson*, 171 Ill. 2d 158, 199-200 (1996). Counsel is obligated to present defendant's meritorious allegations to the trial court at this adversarial hearing. *People v. Reed*, 2018 IL App (1st) 160609, ¶ 52.

¶ 53　　We find that *Krankel* counsel, in properly dispensing her obligations after being appointed, preserved the claim that trial counsel rendered ineffective assistance of counsel by failing to object to the trial court's entry of judgment on counts I and II.

¶ 54　　The trial court's ruling on a motion for new trial will not be reversed absent an abuse of discretion. *People v. Willmer*, 396 Ill. App. 3d 175, 181 (2009). We now review the trial court's denial of defendant's second motion for new trial, which alleged ineffective assistance of trial counsel utilizing this standard.

¶ 55　　Under the familiar test set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984), and adopted by our supreme court in *People v. Albanese*, 104 Ill. 2d 504, 525 (1984), *Krankel* counsel had to establish both that trial counsel's performance was objectively unreasonable under prevailing professional norms and a reasonable probability that, but for the unprofessional performance, the outcome would have differed. *People v. Cherry*, 2016 IL 118728, ¶ 24. To establish deficient representation, defendant must overcome the strong presumption that the challenged inaction might have been the result of sound trial strategy.

*People v. Richardson*, 189 Ill. 2d 401, 411 (2000). To establish prejudice, defendant must show that counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair. *People v. Evans*, 186 Ill. 2d 83, 93 (1999). If a claim can be disposed of based on an insufficient showing of prejudice, a reviewing court need not consider whether counsel's performance was deficient. *People v. Givens*, 237 Ill. 2d 311, 331 (2010).

¶ 56 In order to establish whether the trial court abused its discretion in denying defendant's second motion for new trial, we consider what appears to be the gravamen of defendant's complaint; the trial court's entry of judgment on both counts I and II. This, in turn, directs our attention to the armed robbery statute, which in pertinent part, provides:

> "§ 18-2. Armed robbery.
>
> (a) A person commits armed robbery when he or she violates Section 18-1; and
>
> (1) he or she carries on or about his or her person or is otherwise armed with a *dangerous weapon other than a firearm*; or
>
> (2) he or she carries on or about his or her person or is otherwise armed with a *firearm*[.]
>
> * * *
>
> (b) Sentence.
>
> Armed robbery in violation of subsection (a)(1) is a Class X felony. A violation of subsection (a)(2) is a Class X felony for which 15 years shall be added to the term of imprisonment imposed by the court." (Emphases added.) 720 ILCS 5/18-2(a), (b) (West 2014).

¶ 57 Defendant alleges that trial counsel was ineffective for failing to object to the trial court's entry of judgment on both counts because these findings were legally inconsistent. "Legally inconsistent verdicts occur when an essential element of each crime must, by the very nature of the verdicts, have been found to exist and to not exist even though the offenses arise out of the same set of facts." *People v. Frieberg*, 147 Ill. 2d 326, 343 (1992). Whether two verdicts are legally inconsistent is a question of law subject to *de novo* review. *People v. Price*, 221 Ill. 2d 182, 189 (2006).

¶ 58 While we agree with defendant that counts I and II alleged mutually exclusive offenses (see *People v. Clark*, 2016 IL 118845, ¶ 43), *Clark* does not inform our ultimate decision. *Clark* is wholly distinguishable where, unlike defendant in this case, the defendant in *Clark* was convicted of uncharged offenses that were not lesser-included offenses of the charged offenses. Standing alone, the trial court's entry of "mutually exclusive" findings does not get to the heart of the matter, where defendant remains bound to show that trial counsel's failure to object to their entry denied him effective assistance of counsel.

¶ 59 Resolution of this question requires an examination of the current state of the law for claims involving the legal effect of inconsistent jury verdicts and inconsistent judicial findings. Such examination appropriately begins with our supreme court's decision in *People v. Klingenberg*, 172 Ill. 2d 270, 281-82 (1996), where the court held that inconsistent verdicts that result from an acquittal on an inconsistent charge require reversal because the resulting inconsistent verdicts are unreliable.

¶ 60 Less than a decade later, in *People v. Jones*, 207 Ill. 2d 122, 133-34 (2003), our supreme court overruled *Klingenberg*, holding that "defendants in Illinois can no longer challenge convictions on the sole basis that they are legally inconsistent with acquittals on other charges."

This rule of law was then applied to legally inconsistent judicial findings in *People v. McCoy*, 207 Ill. 2d 352, 358 (2003). The court explained that the application of *Jones* to bench trials was appropriate where "the prospect of confusion identified in *Klingenberg* on the part of a judge sitting in a bench trial is decidedly diminished from that of a jury." *Id.* at 357.

¶ 61    As defendant correctly notes, however, neither *Jones* itself nor its progeny entirely eliminated a defendant's ability to challenge the entry of legally inconsistent verdicts. See *Jones*, 207 Ill. 2d at 135. So that it indeed remains the law in Illinois that a jury's rendering of legally inconsistent verdicts requires a new trial because the trial court is prohibited from entering judgment on one of the inconsistent verdicts to cure the inconsistency, where such action would usurp the jury's independent function of determining guilt or innocence. *Id.*; *People v. Fornear*, 176 Ill. 2d 523, 534-35 (1997). Accordingly, the entry of legally inconsistent jury verdicts will require reversal of the convictions and remand for a new trial. *Price*, 221 Ill. 2d at 194.

¶ 62    Inconsistent judicial findings, however, are fundamentally different than inconsistent jury verdicts. For this reason, the entry of legally inconsistent judicial findings does not trigger a rule of *per se* reversal. *In re J.F.*, 312 Ill. App. 3d 449, 453 (2000); *People v. Rhoden*, 299 Ill. App. 3d 951, 960 (1998). At its core, the distinction between inconsistent jury verdicts and inconsistent judicial findings is rooted in both the fact that a reviewing court, by examining the trial record, may determine whether the trial judge was confused in making his or her disposition of a charge or charges, and in the presumption that the trial court knows the law. *Rhoden*, 299 Ill. App. 3d at 960-61.

¶ 63    Additionally, while a trial court may not correct inconsistent verdicts rendered by a jury without usurping their role as fact finder, the same is not true in a bench trial. " 'A court in a criminal case has inherent power to reconsider and correct its own rulings, even in the absence of a statute or rule granting it such authority.' " *People v. Bryant*, 369 Ill. App. 3d 54, 61 (2006) (quoting *People v. Mink*, 141 Ill. 2d 163, 171 (1990)).

¶ 64    With this legal backdrop in place, we believe that the trial court properly exercised its discretion when it denied defendant's second motion for new trial. "Counsel is presumed to know the law." *People v. Perkins*, 229 Ill. 2d 34, 51 (2007). As a general matter, reasonably competent counsel would understand that the law permitted the court to alter its findings to correct any inconsistency in the judgments. Armed with such knowledge, unless defense counsel believed the trial court's judgments were the result of "confusion," this would make the filing of such a motion at the moment that the judgments were entered a futile act. Refraining from performing a futile act is not ineffective assistance of counsel. *People v. Ivy*, 313 Ill. App. 3d 1011, 1018 (2000).

¶ 65    Here, the trial court had ample basis for rejecting defendant's second motion for new trial where no practical reason justified trial counsel demanding the entry of judgment on either count I or count II, where the court's judgments remained subject to alteration up until the time that they became final. As the State correctly notes, a judgment is not a "conviction" without the imposition of a sentence (*People v. Cruz*, 196 Ill. App. 3d 1047, 1052 (1990)), nor final until the entry of sentence (*People v. Caballero*, 102 Ill. 2d 23, 51 (1984)).

¶ 66    Our conclusion finds support in the case of *J.F.*, 312 Ill. App. 3d 449. In *J.F.*, the trial court entered judgment against the minor on charges of reckless conduct; aggravated battery, based on great bodily harm; and aggravated battery, based on being committed on a public way. At sentencing, the State, concerned that the findings were inconsistent based on differing mental

states, asked the court to clarify its findings. The court ultimately vacated the reckless conduct charge and imposed sentence on the aggravated battery (great bodily harm) count. On review, while agreeing with defendant that the entry of findings on both the reckless conduct charge and aggravated battery charges were legally inconsistent, the court noted that in the absence of any confusion on the part of a trial court that legally inconsistent findings by a trial judge may stand. *Id.* at 453. In rejecting defendant's claim that the error required a new trial, the court found:

> "In the case at bar, the record indicates that the trial court was not confused. It repeatedly stated that the respondent committed the acts at issue with knowledge. We acknowledge that the trial court appeared to be confused by its order of adjudication. However, the record reveals that the trial court entered judgment on only one count of aggravated battery. Further, the trial court resolved the confusion, if any, when it vacated its finding regarding the reckless conduct charge. In addition, the record contains ample evidence to support the court's decision. Accordingly, the trial court's alleged confusion does not warrant a new trial." *Id.*

¶ 67     *J.F* supports the trial court's denial of defendant's second motion for new trial, where it both acknowledges the trial court's inherent authority to correct inconsistent findings and stands for the proposition that the entry of inconsistent judgments will not warrant a new trial unless the judgments result from "confusion" on the part of the trial court. Here, the trial court's articulation of its ability to merge counts recognized this inherent authority and later utilized it to ensure that defendant stood convicted of a single count of armed robbery.

¶ 68     The express findings of the trial court and defendant's first motion for new trial disallows the conclusion that the court was "confused" as to whether or not defendant possessed a firearm. We have no doubt that had either party asked the trial court to enter judgment on only count I or count II, the court would have entered judgment on count I where the court made an explicit finding that Marlante was credible, and that the discrepancy in Marlante's description of the gun left no question "that he knew it was a gun." Where an examination of the record as a whole indicates a lack of confusion, legally inconsistent findings by a trial judge may stand. *Rhoden*, 299 Ill. App. 3d at 961.

¶ 69     We do not interpret *J.F.* as requiring the vacatur of a judgment prior to the imposition of sentence in order for inconsistent judgments to be effectively corrected. Rather, we agree with the State that by operation of law, the merging of a judicial finding of guilt acts to vacate that finding. See *Cruz*, 196 Ill. App. 3d at 1052. Whether count II was eliminated by vacatur or by merger appears to us to be a difference without a distinction.

¶ 70     Another basis exists for concluding that trial counsel was not deficient for failing to demand the entry of judgment on either count I or count II. A reviewing court may affirm on any basis found in the record. *People v. Johnson*, 2019 IL App (1st) 162999, ¶ 49. The thrust of defendant's first posttrial motion sought to eliminate the judgment on count I, which would, unlike count II, require the imposition of a 15-year sentencing enhancement. Reasonable defense counsel, being fully cognizant that judgments on both count I and count II were legally inconsistent, nevertheless, had a legitimate basis for not challenging their entry, where his efforts to eliminate the judgment on count I stood a better chance of success with the finding on count II still intact. Such a tactic left open to the trial court the ability to still convict defendant of armed robbery on count II, in accordance with the overwhelming evidence that

defendant bludgeoned the victim, while ameliorating the harsh sentencing consequences that accompanied a judgment on count I.

¶ 71    Additionally, the trial court did not abuse its discretion in finding that defendant failed to establish resulting prejudice under the second prong of *Strickland*. If anything, by raising this claim in defendant's second motion for new trial, *Krankel* counsel mitigated any potential prejudice by ensuring that defendant was only sentenced on count I. Again, the court not only impliedly recognized its inherent authority to correct any discrepancy at sentencing, but did so by only imposing sentence on count I.

¶ 72    Defendant's reliance on *People v. O'Neil*, 194 Ill. App. 3d 79 (1990), and *Fornear*, 176 Ill. 2d 523, does not alter our conclusion. In *O'Neil*, the trial court entered sentences on the inconsistent findings. In *Fornear*, the jury entered legally inconsistent verdicts. Again, our review in this case is limited to whether the trial court's rejection of *Krankel* counsel's assertion of ineffective assistance of counsel, based on a failure to object to its entry of inconsistent judgments, was erroneous. Neither *O'Neil* nor *Fornear* shed any light on this precise question.

¶ 73    We conclude that the trial court did not abuse its discretion when it denied defendant's second motion for new trial alleging ineffective assistance of counsel for failing to challenge the entry of inconsistent judicial findings on counts I and II.

¶ 74                            C. Excessive Sentence Claim

¶ 75    In his final claim of error, defendant contends that his 32-year sentence for armed robbery with a firearm is excessive in the face of "significant mitigation evidence." Generally, a trial court stands in a better position than a court of review to determine an appropriate sentence based on the particular circumstances of each case. *People v. Gordon*, 2016 IL App (1st) 134004, ¶ 50. The trial court has broad discretionary powers in imposing a sentence. *People v. Alexander*, 239 Ill. 2d 205, 212 (2010). A trial court's balancing of factors in aggravation and mitigation is accorded great deference. *People v. Illgen*, 145 Ill. 2d 353, 379 (1991). Such deference acknowledges the trial court's superior ability to consider defendant's credibility, demeanor, moral character, mentality, social environment, habits, and age. *People v. Lundy*, 2018 IL App (1st) 162304, ¶ 23. As such, a reviewing court may not modify a defendant's sentence absent an abuse of discretion. *Alexander*, 239 Ill. 2d at 212.

¶ 76    To preserve a claim of sentencing error, both a contemporaneous objection and a written postsentencing motion raising the issue are required. *People v. Hillier*, 237 Ill. 2d 539, 544 (2010). An unpreserved claim of error may be considered only where the defendant has established plain error. *Id.* at 545.

¶ 77    Defendant admits that this claim is not preserved because defense counsel did not obtain a ruling on his written motion to reconsider. In a footnote, defendant states that his motion for leave to file a late notice of appeal "abandoned the motion to reconsider sentence." Based on this representation, we begin by determining whether plain error review is appropriate in this case.

¶ 78    There is an important distinction to be drawn between the concepts of "forfeiture" and "waiver." *People v. Williams*, 2015 IL App (2d) 130585, ¶ 6. "Although a forfeited error may qualify for review under the plain-error rule, *waiver* of a right forecloses review of a claim of error predicated on the waived right." (Emphasis in original.) *Id.* Here, the record establishes that after defendant filed a timely notice of appeal on June 14, 2018, four days later, on June

- 13 -

18, 2018, privately retained counsel filed an appearance; a motion to reconsider sentence, alleging that the trial court failed to consider defendant's rehabilitative potential in imposing sentence; and an accompanying 604(d) certificate that averred "On June 13, 2018 Lawrence Boyd told me what his contentions of error are with respect to the sentencing hearing that was held in this matter."

¶ 79   On June 14, 2018, the appellate court entered an order noting that defendant's notice of appeal was prematurely filed and would not be transmitted to the appellate court, ordering the Office of the State Appellate Defender to file a timely notice of appeal, and directing the Clerk of the Circuit Court to notify defendant and the Office of the State Appellate Defender of the court's order.

¶ 80   Defendant's motion to file a late notice of appeal alleged that, upon APD Fawcett's filing of a notice of appeal on defendant's behalf, "defendant's family retained a private attorney (Bernard Shelton) who filed a motion to reduce sentence. This action was done without Mr. Boyd or APD Fawcett's knowledge." Further investigation into this matter, which included "speaking with both Mr. Shelton and APD Fawcett," revealed that Mr. Shelton and defendant's family were unable to reach an agreement concerning how to pay for his services, whereupon Mr. Shelton ceased his representation of defendant without filing a new notice of appeal or following up on his previously filed motion. APD Fawcett was unaware that another attorney had become involved in Mr. Boyd's case, and it was her belief that the case had properly moved on to the direct appeal stage after her filing of a timely notice of appeal. Based on these circumstances, defendant sought leave to file a late notice of appeal from his underlying conviction. The motion stated, "[p]ut another way, this Court should honor and consider the initial notice of appeal filed on June 14, 2018, by APD Fawcett as the correct and controlling notice of appeal."

¶ 81   We granted defendant's motion on January 8, 2019.

¶ 82   Based on the peculiar facts of this case, we find defendant's sentencing claim forfeited and, therefore, potentially subject to application of the plain error doctrine. Nevertheless, we agree with the State that defendant has failed to establish the existence of a clear error in his sentence.

¶ 83   A sentence imposed within the statutory range will not be deemed excessive unless it is "greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense." *People v. Stacey*, 193 Ill. 2d 203, 210 (2000). Relevant factors in determining an appropriate sentence include the nature of the crime, protection of the public, deterrence, punishment, and the defendant's rehabilitative prospects and youth. *People v. Bobo*, 375 Ill. App. 3d 966, 988 (2007); *People v. Lamkey*, 240 Ill. App. 3d 435, 441-42 (1992).

¶ 84   As noted by the State, defendant's 32-year sentence, which included a mandatory 15-year add-on, was well within the permissible sentencing range of 21 to 45 years. See 720 ILCS 5/18-2(a)(2), (b) (West 2014). Additionally, the trial court's findings show a proper exercise of discretion in imposing sentence:

> "THE COURT: The Court does find—I remember the testimony and I remember this case very well. The Court does find that there is great bodily harm in this case. The great bodily harm being not only the cuts to the eyebrows. I remember the complaining witness indicating how much blood there was. There was stitches. He was in the hospital for three days. He had a broken bone near his eye. The Court finds that that is sufficient for a finding of great bodily harm, so your sentence will be served at 85 percent pursuant to the statute. In looking at your criminal history, you have several

- 14 -

gun violations or convictions in your background and a couple batteries. Granted they are misdemeanors, but it shows violence. You even went to the penitentiary, and it just doesn't look like you are getting it. You had so much potential. You got a high school diploma. You tried one year of college. It is all about the choices that you make. There was—this was just a senseless, senseless act on your part, and now the complaining witness has to live with these reminders every single day. Not that he needs the scars to remind him. I am sure he doesn't. I am sure he doesn't, but what you did was just senseless and for no reason. Absolutely no reason. The Court finds that the minimum sentence isn't appropriate in this matter based upon all of the factors in aggravation and mitigation, and I do want to say I am taking the factors in mitigation into account as well and the statutory factors and also the fact that you don't show even just an ounce of remorse, not one. The Court finds that the sentence in this case is necessary because your conduct did threaten serious harm, you caused serious harm to the complaining witness, that you have a prior history of delinquency or criminal activity and that the sentence is necessary to deter others from committing the same crime and for all of the other reasons I just stated. The Court finds that the appropriate sentence in this case is going to be 17 years on count one plus 15 years for the enhancement of armed—while armed with a firearm. So that's a total of 32 years IDOC to be followed by three years of mandatory supervised release upon your release from the penitentiary. That's going to be served at 85 percent because of the finding of great bodily harm. Fines, fees and costs in the amount of $589. 712 days Cook County Department of Corrections time considered served, time actually served, and you will get $5 per day credit towards any fines that it can be applied towards."

¶ 85        In *People v. Gordon*, 2016 IL App (1st) 134004, ¶ 53, defendant alleged that his 22-year sentence for armed robbery and consecutive mandatory 15-year term for being armed with a firearm, for a total of 37 years was excessive where "no one was injured and only $1243 was taken from the store." The court rejected his claim, initially noting that the defendant's 37-year sentence was "well below the maximum permissible sentence." *Id.* ¶ 56. The court determined that the trial court did not abuse its discretion in imposing a 37-year sentence where

> "[t]he experienced trial judge properly considered the seriousness of the offense and relevant factors in mitigation and aggravation when it imposed a sentence within the statutory range. The court acted within its discretion when it imposed a lengthy, yet well-thought-out sentence. Accordingly, we decline to reduce defendant's sentence or to remand for a new sentencing hearing." *Id.* ¶ 61.

¶ 86        As in *Gordon*, the trial court did not abuse its discretion in imposing sentence. In addition to granting defendant an entirely new sentencing hearing, the trial court offered defendant the opportunity to have a new PSI prepared that correctly reflected defendant's history. When defendant declined that offer, the trial court ensured that it possessed correct information pertaining to defendant's background.

¶ 87        The trial court considered factors in aggravation and mitigation, including defendant's rehabilitative potential. Defendant, whose criminal history included a prior weapons offense for which he was incarcerated, badly injured Marlante during the commission of this offense and threatened to kill him. This behavior did not abate when, at the preliminary hearing, defendant continued to threaten Marlante. Defendant's lack of remorse was clearly evidenced in his statement in allocution.

¶ 88 Nevertheless, the trial court fashioned a sentence that fell at the midway point of the sentencing range. We believe that defendant's 32-year sentence was arrived at by the court after a thorough consideration of the mitigation evidence that it heard at the sentencing hearing.

¶ 89 In conclusion, defendant has failed to show any error in his sentence.

¶ 90                                      III. CONCLUSION

¶ 91 For the foregoing reasons, we affirm defendant's convictions and sentence for armed robbery while armed with a firearm.

¶ 92 Affirmed.